2001 OK 92

Jack CORMAN, an individual,
Plaintiff–Appellee,

v.

H–30 DRILLING, INC., a Kansas
Corporation, Defendant–
Appellant,

and

Pauline K. Selman and Walter Stenglemei-
er, co-personal representatives of the Es-
tate of Robert E. Selman, Deceased.
Defendants.

No. 94,255.

Supreme Court of Oklahoma.

Oct. 30, 2001.

As Corrected March 21, 2002.

L. Vance Brown, Michael J. Massad, Elias, Books, Brown, Peterson & Massad, P.C., Oklahoma City, OK, for Plaintiff–Appellee.

M. Thad Groom, Jeffrey E. Tate, Groom, Hammond & Harris, P.C., Oklahoma City, OK, for Defendant–Appellant.

## OPINION

WATT, Vice Chief Justice.

### FACTS AND PROCEDURAL BACKGROUND

¶1 In 1987, defendant, H 30 Drilling, Inc., was a Kansas corporation that was licensed to do business and doing business in Oklahoma. That year, H–30 drilled an oil and gas well in Woods County, Oklahoma for Plaintiff, Jack Corman. Corman held a lease to the oil and gas interests underlying the well and operated the well after its completion. In 1991 the Oklahoma Corporation Commission instituted proceedings against Corman as the well's operator to require him to clean up claimed pollution to the aquifer underlying the well. As a result of the Corporation Commission's actions, Corman was obliged to expend considerable funds in re-moving pollutants from the aquifer. In 1994 Corman brought suit in the District Court of Oklahoma County against H–30 and Robert E. Selman, who had been H–30's subcontractor and had done the dirt work on the well. Corman ultimately settled with Selman's estate and the estate is no longer a party to the suit.

¶2 The suit between Corman and H–30 was hotly contested. After years of discovery and motions—there were nearly five-hundred pages of pleadings in the record at the time the case was called for trial—the case finally was scheduled to come to trial on January 10, 2000. On the morning of trial Corman filed and presented to the trial court, Hon. Daniel L. Owens District Judge, a motion to deprive H–30 of its right to either defend against Corman's claims against it or to present its counterclaim.

¶3 Corman based his motion on *68 O.S. 1991 § 1212* (c),[1] which denies to a corporation that has not paid its franchise taxes the right to sue, defend, or obtain affirmative relief in any court in the state until and unless its right to do so has been reinstated by payment of its taxes. Attached to Corman's motion was a copy of a certificate of suspension signed by the Secretary of State, which showed that on December14, 1992 H–30 had been suspended for failure to pay its franchise taxes. H–30 requested a short continuance so that it could pay its franchise taxes but the trial court denied H–30's request and immediately entered judgment for Corman. A short while later that day the trial court heard Corman's testimony concerning his claimed damages and entered judgment for Corman in the amount of his claimed damages, $197,676.05. A journal en-

---

1. Title 68 O.S.1991 § 1212(c) provides:

    Each trustee, director or officer of any such corporation, association or organization, whose right to do business within this state shall be so forfeited, shall, as to any and all debts of such corporation, association or organization, which may be created or incurred with his knowledge, approval and consent, within this state after such forfeiture and before the reinstatement of the right of such corporation to do business, be deemed and held liable thereon in the same manner and to the same extent as if such trustees, directors, and officers of such corporation, association or organization were partners. Any corporation, association or organization whose right to do business shall be thus forfeited shall be denied the right to sue or defend in any court of this state, except in a suit to forfeit the charter of such corporation, association or organization. In any suit against such corporation, association or organization on a cause of action arising before such forfeiture, no affirmative relief shall be granted to such corporation, association or organization unless its right to do business in this state shall be reinstated as provided herein. Every contract entered into by or in behalf of such corporation, association or organization, after such forfeiture as provided herein, is hereby declared to be voidable.

try of judgment was signed and filed by noon that day.

¶ 4 Corman filed an application for attorneys' fees and costs on February 9, 2000. The trial court held a hearing on Corman's motion on March 20, 2000 and entered judgment for an attorneys' fee of $106,657.20 and costs of $4,948.45 on March 29, 2000. Thus the economic impact upon H–30 of the trial court's decision not to allow it time within which to pay $170.00 in franchise taxes amounted to $309,281.70.

¶ 5 The trial court did not allow H–30 to participate after Corman filed his motion on the ground that the court was not required to hear H–30's presentation "because it is a non-entity for that purpose." The trial court also said, "... basically we're here for purposes of a default judgment this morning." The record reflects that Corman had known for nearly two years that H–30 had not paid its franchise taxes but did not raise the issue until the morning of trial. For reasons the record does not make clear, the trial court did allow H–30 to participate in the attorneys' fee phase of the case, despite its earlier refusal to allow H–30 to defend on the merits because it "is a non-entity."

¶ 6 H–30 paid its back franchise taxes, $170.00, on the same day the trial court entered judgment against it. Three days later, on January 13, 2000, H–30 filed a motion to vacate the judgment the trial court had entered against it. Attached to H–30's motion to vacate the judgment was a certificate of good standing from the Secretary of State and a letter from the Tax Commission certifying that H–30 had paid its back franchise taxes on January 10, 2000. Following a hearing,[2] the trial court denied H–30's motion to vacate on January 21, 2000 and H–30

appealed. The Court of Civil Appeals, Division 3, in a two-to-one opinion, affirmed the trial court.

## ISSUE

¶ 7 The primary issue here is whether the trial court erred in denying H–30's motion to vacate the January 10, 2000 judgment. Subsumed in this issue is the question of whether the trial court's denial to H–30 of a reasonable time to pay its taxes after it learned of Corman's January 10, 2000 motion denied H–30 its right to due process of law. We hold that the trial court did err in denying H–30's motion to vacate judgment and denied H–30 its right to due process of law when the court refused to allow H–30 a reasonable time to pay its taxes after it learned of Corman's January 10, 2000 motion.

## DISCUSSION

¶ 8 Title 68 O.S.2001 § 1212(c) provides in material part,

... In any suit against such corporation, association or organization on a cause of action arising before such forfeiture, no affirmative relief shall be granted to such corporation, association or organization *unless its right to do business in this state shall be reinstated as provided herein* ....

[Emphasis added.] We interpreted § 1212(c) In *Bethlehem Steel Corp. v. Giese*, 1984 OK 28 ¶ 8, 681 P.2d 769, 771. There we held that the payment by a corporation of its back franchise taxes did not serve to insulate officers and directors who did business while the corporation was suspended. We recognized, however, that § 1212(c) has a "relation-back" component, "which is applicable to

---

2. At the hearing on H–30's motion to vacate, the trial court justified its refusal to vacate by saying, among other things,

> And I know there's been a lot of money expended by H–30. But when you look at the historical background of this case the plaintiff in this case has had to expend a significant amount of money litigating with a client [sic] under our law that doesn't have a right to sue or defend. That being H–30. So when you start looking at due process and fundamental fairness I think you have to look at all those issues.

The trial court did not explain why he apparently thought that allowing H–30 a reasonable time to pay its franchise taxes would have been fundamentally unfair, although allowing H–30 to do so would merely have maintained the *status quo*, whereas not allowing it to do so deprived H–30 of its right to defend in a $309,000.00 lawsuit. The trial court also did not address the fact that Corman did not raise the franchise tax issue until the morning of trial, although he had know about it for nearly two years.

the right to defend and the right to sue provisions of § 1212."

¶ 9 In *J.D. Simmons, Inc. v. Alliance Corp.*, 79 F.R.D. 547 (W.D.Okla.1978), which we quoted from in *Nichols–Homeshield, Inc. v. Mid–American Construction Supply, Inc.*, 1982 OK 41 ¶ 6, 643 P.2d 309, 311, the federal court held observed,

> Once the taxes have been paid and the corporation reinstated, the purpose behind section 1212 has been met and no further penalty should be imposed.

The basis for the federal court's holding was this Court's opinion in *Midvale Min. & Mfg. Co. v. Dutron Corp.*, 1977 OK 155 ¶ 4, 569 P.2d 442, 443, in which we held, "Failure to pay franchise taxes is an issue between the corporation and the State because franchise tax statutes are solely for revenue-raising purposes...." Section 1212(c)'s purpose is to encourage taxpayers to pay their franchise taxes, not to trap them into losing their rights to defend lawsuits. Clearly, the policy of the tax law would have been satisfied if the trial court had given H–30 the short time it needed to pay its back taxes.

¶ 10 The foregoing opinions make clear that if Corman had given H–30 notice reasonably in advance of the presentation of his motion of his intention to seek to deprive H–30 of its right to defend the suit under § 1212(c), this dispute need never have arisen. H–30's payment of its back franchise taxes would have related back because, at the time H–30's acts Corman complains of took place, H–30 was in good standing in Oklahoma. H–30 had expended many years and tens of thousands of dollars in defending itself against Corman's claims. Thus, there is no record support for a conclusion that H–30 intentionally failed to pay a $170.00 tax, although not doing so put it at risk of losing its right to defend against Corman's suit.

¶ 11 It is a fundamental precept of the law that no citizen may be deprived of life, liberty, or property without due process of law and that reasonable notice of an action that would so deprive it is its due under the constitution. We have held, "When significant property interests are *adversely affected or likely to be affected,* notice is one's constitutional due." *Norman v. Trison Develop-ment Corporation,* 1992 OK 67, 832 P.2d 6, 9. [Emphasis as in the original.] The notice that H–30 received on the morning of trial of Corman's motion to deprive it of its rights to defend the lawsuit came too late to allow H–30 time to pay its taxes and thereby resolve the issue.

¶ 12 In *Luster v. Bank of Chelsea,* 1986 OK 74 ¶ 14, 730 P.2d 506, 509, notice of a tax resale of realty was not given to the property owner who had not paid her *ad valorem* taxes. Although all statutory notice requirements had been satisfied, we set aside the tax resale, holding,

> ... The focus of our inquiry is not whether the notice substantially complied with state statutory procedures; but rather, whether the notice satisfied the elementary and fundamental requirement of due process. In *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the leading case on due process requirements as to notice, the United States Supreme Court held *where an action affects a person's interest in life, liberty or property such person is entitled to notice reasonably calculated, under all the circumstances, to be apprised of the pendency of the action and afforded an opportunity to present objections.*

[Emphasis added.] Here the trial court denied H–30 the time necessary to establish the only defense to the motion that was important: that it had paid a relatively insignificant $170.00 tax bill. In so doing the trial court ignored the notice requirements contained in several Rules for District Courts.

¶ 13 The policy of the law is that all issues in a case must be identified in a seasonable manner. The purpose of this requirement is to avoid trial-by-ambush, in which a party is surprised and then not given a reasonable time to effectively defend itself. The Pleading Code, 12 O.S.2001 §§ 2001, *et seq.,* was designed to prevent this sort of thing. The purpose of the Pleading Code is expressly stated in 12 O.S.2001 § 2001: "It shall be construed to secure the just, speedy, and inexpensive determination of every action." Section 2016 of the Pleading Code provides, "In the absence of specific superseding legis-

lation, the procedures for conducting pretrial conferences shall be governed by rules promulgated by the Supreme Court of Oklahoma." The nature and requirements of pretrial orders are specified in Rule 5(I), Rules for District Courts. In material part, Rule 5(I) provides:

Pretrial Orders....

*The pretrial order shall include* the results of the conference and *advice to the court regarding the factual and legal issues,* including details of material evidence to be presented. *The order shall also present all questions of law in the case* .... The contents of the pretrial order shall supersede the pleadings and govern the trial of the case unless departure therefrom is permitted by the Court to prevent manifest injustice....

[Emphasis added.] Under Rule 5(I) any issue not identified in the pretrial order will not be considered unless it is permitted to prevent "manifest injustice."

¶ 14 We see no basis for Corman's failure to identify and include in the pretrial order the franchise tax issue. Corman's counsel admitted to the trial court at the hearing of his motion to deprive H–30 of its defenses that he had know for nearly two years that H–30 had not paid its Oklahoma franchise taxes.[3] The franchise tax issue was an issue in the case like all others and Corman was obliged to identify it in the pretrial order.[4]

¶ 15 The trial court committed reversible error when it allowed Corman to present its motion without first giving H–30 a reasonable opportunity to pay its back taxes. Rule 5(I) directs trial courts not to allow departure from the contents of the pretrial order "unless departure therefrom is permitted by the Court *to prevent manifest injustice.*"

[Emphasis added.] We note that the only prejudice Corman might have suffered if the trial court had granted H–30 a short continuance would have been the possible loss of its place on the jury docket. Clearly, this would have been a small price to pay for Corman's having manifestly violated both Rule 5(I) of the Rules for District Courts.

¶ 16 The trial court erred in his assumption that H–30's non-payment of its franchise taxes required him to immediately deprive H–30 of its right to defend. This conclusion ignored the fact that due process requirements and the express terms of Rule 5(I) of the Rules for District Courts prohibited Corman from presenting an issue that he had not identified in the pretrial order without first showing "manifest injustice."

¶ 17 As we have held that the trial court erred in allowing Corman to present his motion to deprive H–30 of its right to defend, we also hold that the trial court erred in denying H 30's motion to vacate the judgment entered against it. H–30's motion to vacate established that it had paid its franchise taxes. The fact that H–30 had paid its taxes within a few hours of the time the trial court refused to allow it a continuance to do so was an additional reason not to deprive H–30 of its right to establish a defense to Corman's lawsuit.

¶ 18 The parties have called our attention to three Court of Civil Appeals opinions that have addressed the effect of a corporation's suspension for non-payment of franchise taxes and the propriety of the trial court's handling of the issue. *Aviation Data Service v. A.C.E. Copier Service, Inc.,* 1992 OK CIV APP 41, 832 P.2d 31; *Sapulpa Travel Services, Inc. v. White,* 1996 OK CIV APP 21,

---

**3.** At the hearing on Corman's motion to deprive H–30 if its right to defend, H–30's counsel explained to the trial court that H–30 had not paid its Oklahoma franchise tax through inadvertence. He explained that, before 1992, H–30 sold its equipment and went out of business. Later, its buyer defaulted and H–30 repossessed the equipment and made current its status as a Kansas corporation. Because it was no longer doing business in Oklahoma, however, H–30 did not redomesticate itself in Oklahoma. There is some indication that a lawyer who had since left the firm that represents H–30 may have become aware of the Oklahoma franchise tax problem

some three years before the trial but the lawyer who was primarily responsible for the defense of the Corman case said, without contradiction, that he did not know until the morning of the hearing that H–30 had an unpaid Oklahoma franchise tax liability.

**4.** We have criticized the practice of "laying behind a log," that is, waiting until the last minute to present an argument in order to achieve surprise. *In re Sara O., a Minor Child,* 1993 OK 10 ¶ 8, 847 P.2d 768, 770, note 4.

915 P.2d 396; *and Century Investment Group, Inc. v. Bake Rite Foods, Inc.*, 2000 OK CIV APP 48, 7 P.3d 510. These opinions deal with facts significantly different from those in the case before us today. In two of those opinions, *Bake Rite* and *Aviation Data Service*, the defendants never proved that they had paid their back franchise taxes.

¶ 19 In the third Court of Civil Appeals opinion, *Sapulpa Travel Services v. White*, defendant, White, appealed from an order of the trial court that had set aside a summary judgment against the plaintiff, travel agent. Summary judgment had been entered upon White's proof that the travel agent had not paid its franchise taxes. The travel agent paid its taxes later, however, and the trial court granted its motion to vacate the summary judgment. The Court of Civil Appeals affirmed. We address these Court of Civil Appeals opinions in order to make clear that they should not be considered authority for depriving a party to a lawsuit if its right to defend for non-payment of franchise taxes without a reasonable opportunity having been given to pay those taxes. The basis for this rule is that § 1212(c)'s policy is to encourage taxpayers to pay their taxes, not to deprive them of the right to present claims or defenses in lawsuits.

¶ 20 Our holding today should not be interpreted to mean that a corporation that does not pay its franchise taxes should be allowed to continue to participate in a lawsuit indefinitely. Such a corporation should be given a reasonable opportunity to pay its taxes, but if it does not do so at the first opportunity after the fact of its non-payment has been raised in a lawsuit, its right to pay them should be deemed to have been waived.

### CONCLUSION

¶ 21 Corman violated Rule 5(I) of the Rules for District Courts when, on the morning of trial and without prior notice to H–30, he submitted for decision by the trial court his motion to deprive H–30 of its defenses for non-payment of franchise taxes. The trial court committed reversible error in not allowing H–30 an opportunity to pay its back

taxes before the trial court entered judgment against H–30. It is fundamental that no citizen may be deprived of its life, liberty, or property without reasonable notice that will allow it to defend itself in a meaningful way, *Luster v. Bank of Chelsea*, 1986 OK 74 ¶ *14*, 730 P.2d 506, 509. The trial court denied H–30's request for time to pay its taxes and then acted so quickly that he guaranteed H–30's inability to pay its taxes before judgment was entered against it. By so doing, the trial court sanctioned Corman's violations of the notice requirements in Rule 5(I) and thereby denied H–30 its right to due process of law. The trial court erred again when he denied H–30's motion to vacate, although H–30 proved that it had paid its $170.00 tax bill on the same day the trial court had entered judgment against it.

¶ 22 Although a corporation that is a party to a lawsuit should be given a reasonable opportunity to pay back franchise taxes after its opponent raises the issue, it must then pay its taxes promptly and it should not be allowed to continue to participate in the suit indefinitely if it fails to do so.

¶ 23 CERTIORARI PREVIOUSLY GRANTED, COURT OF CIVIL APPEALS' OPINION VACATED, JUDGMENT OF THE DISTRICT COURT REVERSED AND REMANDED FOR TRIAL ON THE MERITS.

¶ 24 HARGRAVE, C.J., WATT, V.C.J., HODGES, LAVENDER, KAUGER, SUMMERS, BOUDREAU, WINCHESTER, JJ.-concur.

¶ 25 OPALA, J.-concurs in result.

OPALA, J., concurring in the result of the court's opinion.

¶ 1 The court holds today that 1) the trial court erred when it denied H–30's motion to vacate the judgment and 2) H 30's due process rights were violated when its request for time to pay a delinquent franchise tax came to be rejected, all of which resulted in H–30's loss of right to defend against the claim. 68 O.S.1991 § 1212(c).[1] While I do not recede

---

**1.** The relevant terms of 68 O.S.1991 § 1212(c)   provide:

from the court's ultimate disposition on certiorari, I cannot join its pronouncement. I hence write separately to offer *my* analysis of the law that governs this case.

¶ 2 The requirements of due process and notice have no place in my analysis. H–30 presumably had notice of its lapsed-franchise status,[2] and its notice was the lawyer's notice.[3] H–30's counsel never denied his client's loss of corporate status but merely asked for additional time to cure the charter's suspension in order to secure reinstatement of its right to defend against the claim.

¶ 3 Neither was the element of surprise of any moment here except perhaps insofar as H–30 might have been unaware that its suspended status came to Corman's knowledge. In the course of litigation, a loss of charter cannot be a surprise to one charged with actual knowledge or, at a minimum, with constructive knowledge of one's delinquency. *The burden rests on the corporate taxpayer to show its lack of notice.* H–30's lawyer should have gone forward to show that the client had no notice of the tax delinquency; only by tendering that fact could H–30 have injected the element of surprise into this case. We presume, for lack of proof to the contrary, that the corporation had knowledge of its delinquency, but, if it indeed utterly lacked notice, the burden of proving absence of knowledge was to be borne by the corporation. Here, the law's requirement for notice to H–30 clearly has not been triggered by laying the necessary probative predicate.[4]

¶ 4 This case calls for our answer to the question of what a judge should do when *the delinquent taxpayer*—plaintiff or defendant—appears for trial and a challenge is raised to its corporate status by reliance on § 1212(c). Should the charter's lapse be conveyed to a judge assigned to a case, *and the delinquent taxpayer who is the defendant does not deny it,* the court should inquire whether the defendant wishes to be afforded an opportunity for tardy remittance of the overdue assessment and for its charter's reinstatement. If this opportunity be sought, the court *should* allow a reasonable time and reset the case for a day certain to conduct another inquiry into the charter's reinstatement. Should on the appointed day defendant's restored corporate status be shown, the judge could then proceed to trial. If the delinquent taxpayer's lawyer does not wish to request time for restoration of the client's charter, a judgment against the lapsed-corporate entity must be entered instanter.

¶ 5 Should the *party challenged for tax delinquency be the plaintiff,* the judge would be duty bound to deny it the right to prosecute the action. The party bringing a claim during its charter's suspension would lack capacity to maintain the suit.[5] Upon such

* * * *"Any corporation, association or organization whose right to do business shall be thus forfeited shall be denied the right to sue or defend in any court of this state,* except in a suit to forfeit the charter of such corporation, association or organization. In any suit against such corporation, association or organization on a cause of action arising before such forfeiture, *no affirmative relief shall be granted to such corporation, association or organization unless its right to do business in this state be reinstated as provided herein."* * * *
(emphasis added).

**2.** The law's expected degree of awareness is defined in *25 O.S.1991 §§ 10–13. Matter of Estate of Pope,* 1990 OK 125, ¶¶ 10–11, 808 P.2d 640, 646. The provisions of *25 O.S.1991 §§ 10–13* are: "Notice is either actual or constructive." *25 O.S.1991 § 10.* "Actual notice consists in express information of a fact." *25 O.S.1991 § 11.* "Constructive notice is notice imputed by the law to a person not having actual notice." *25 O.S.1991 § 12.* "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself." *25 O.S.1991 § 13.*

**3.** A lawyer acts as personal agent of the client. *Towne v. Hubbard,* 2000 OK 30, ¶ 14, 3 P.3d 154, 160. Knowledge of the principal is imputed to the agent (and *vice versa* ), absent circumstances raising a presumption to the contrary. *N.H. v. Presbyterian Church (U.S.A.),* 1999 OK 88, ¶ 22, 998 P.2d 592, 601.

**4.** Due process requires that a deprivation of property be preceded by notice and opportunity for a hearing appropriate to the nature of a case. *Blocker v. Martin,* 1994 OK 17, ¶ 4, 868 P.2d 1316, 1316 (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950)).

**5.** Where in the past one's claim stood subject to taxation under the now-defunct intangible tax law, and plaintiff failed to establish proof of compliance with this jurisdictional prerequisite,

plaintiff's request, the trial judge should defer the claim's imminent dismissal(without prejudice) by granting a continuance to a day certain for remittance of the delinquency. Absent plaintiff's request for time to cure the delinquency, it is incumbent on the judge to *dismiss the cause instanter without prejudice.*[6] The post-dismissal remedy still available to the corporate plaintiff would be by refiling the suit within one year.[7]

¶ 6 Courts are neither the state government's tax collectors nor its punitive arm for revenue enforcement. Their constitutional mission in conforming judicial process to the standards prescribed by § 1212(c) does not allow for visiting a vendetta on recalcitrant corporations whose charter stands suspended.[8] Once H–30 had paid the overdue assessment, its charter stood *reinstated retrospectively* from the date the delinquency first arose. By relation back, it came to be restored from the day of its lapse.[9] The trial

judge should have initially allowed H–30 a *limited* time to remit the tax delinquency; once that hurdle was removed, H–30 *regained* its right to defend against the claim earlier adjudicated in favor of the plaintiff.

¶ 7 Courts must accord to a defendant whose charter has lapsed the same treatment as that which they are duty-bound to extend to a plaintiff found to be in like circumstances. Because the corporate defendant, who should have been afforded a window of opportunity to pay the delinquent franchise tax, cured its charter's lapsed status within a reasonable time, there was error in failing to vacate the earlier judgment.

the trial court was without authority to enter judgment for recovery. It was directed to dismiss the cause without prejudice. *Harris v. Conway*, 1959 OK 24, ¶ 17, 343 P.2d 1069, 1078; *Henry Building Co. v. Cowman*, 1961 OK 75, ¶ 34, 363 P.2d 208, 215; *Craft v. Bates*, 1962 OK 122 ¶ 13, 372 P.2d 10, 13.

6. *Id.*

7. The pertinent terms of *12 O.S.1991 § 100* provide:

"If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if the plaintiff fail in such action otherwise than upon the merits, the plaintiff, or if he should die, and the cause of action survive, his representatives may commence a new action

within one (1) year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed."

An action that failed on grounds unrelated to the merits of the controversy falls within the ameliorative relief affordable under the terms of *12 O.S.1991 § 100. Matter of Estate of Speake*, 1987 OK 61, ¶ 5–6, 743 P.2d 648, 650; *Griesel v. Fabian*, 1938 OK 589, ¶ 6, 84 P.2d 634, 635.

8. *Ex Parte Coffelt*, 93 Okla. Cr. 343, 1951 OK CR 212, 228 P.2d 199, 201–203.

9. *R.V. McGinnis Theatres & Pay T.V., Inc. v. Video Independent Theatres, Inc.*, 262 F.Supp. 607, 613 (D.C.Okl.1967); *Flour Mills of America, Inc. v. Pace*, 75 F.R.D. 676, 679 (E.D.Okl.1977).