2009 OK 36

**Michael WILLIAMS, M.D., Plaintiff,**

v.

**SMITH & NEPHEW, INC., Respondent/Defendant,**

and

**Dunlap Medical, Petitioner/Defendant.**

No. 106,359.

Supreme Court of Oklahoma.

May 26, 2009.

Stanley M. Ward, Woodrow K. Glass, Scott F. Brockman, Scott K. Thomas and Zachary K. Bradt, Ward & Glass, LLP, Norman, OK, for the Petitioner.

Richard M. Eldridge, Thomas E. Steichen, Alison A. Verret, Eldridge, Cooper, Steichen & Leach, PLLC, Tulsa, OK, for the Respondent Smith & Nephew, Inc.

HARGRAVE, J.

¶ 1 Dunlap Medical, Inc. seeks review of an order that dismissed its cross-claims against Smith & Nephew, Inc. because those claims arose while Dunlap Medical was suspended for failure to pay its franchise taxes. Dunlap Medical was suspended as a corporation on March 23, 2001 and was reinstated on March 11, 2008. The trial judge granted Smith & Nephew's motion to dismiss, except as to Dunlap Medical's claim for indemnification, holding that, pursuant to 68 O.S. Supp. § 2008 1212(C), claims that arise during the period of a corporation's suspension cannot be pursued after the corporation is reinstated.[1] The trial judge certified the interlocutory order for immediate appeal pursuant to 12 O.S.2001 § 952(b)(3) and Okla. Sup.Ct. R. 1.50, 12 O.S.2001, Ch. 15, App. 1. We granted certiorari to review the order.

## BACKGROUND

¶ 2 Plaintiff Michael Williams, M.D. is an orthopedic surgeon who surgically placed a medical device manufactured by Smith & Nephew into several patients. Dunlap Medical was the Oklahoma distributor of the medical device who sold it to Dr. Williams. Dr. Williams filed suit against Dunlap Medical, Inc. and Smith & Nephew, Inc. on August 7, 2007, alleging that the medical device was a defective product that eventually was recalled or withdrawn by Smith & Nephew.

Plaintiff pled claims for intentional interference with business relations, deceit, intentional infliction of emotional distress and indemnification.

¶ 3 Dunlap Medical filed a cross-claim against Smith & Nephew, alleging that it had been misled by them and that any liability on the part of Dunlap Medical is a result of Smith & Nephew's actions. Dunlap pled claims for tortious interference with business relations, deceit, intentional infliction of emotional distress and indemnification as to any claims pending or that may be filed in the future relating to the medical device.

¶ 4 Smith & Nephew initially moved to strike Dunlap Medical's cross-claims by asserting that the claims did not arise out of the same transaction or occurrence as the claims of the plaintiff. The trial judge ruled that Dunlap's claims that did not arise out of the same subject matter as plaintiff's claims should be consolidated for discovery purposes and reserved the determination of bifurcation until pretrial. Smith & Nephew then filed a motion to reconsider in which, among other things, they moved to dismiss the cross-claims due to Dunlap Medical's lack of capacity to sue because it had been suspended for failure to pay franchise taxes. Dunlap Medical filed a response showing that its corporate charter had been reinstated on March 11, 2008 and argued that the incapacity issue was moot.[2]

---

1. 68 O.S. Supp.2008 § 1212(C) provides:

    C. Each trustee, director or officer of any such corporation, association or organization, whose right to do business within this state shall be so forfeited, shall, as to any and all debts of such corporation, association or organization, which may be created or incurred with his or her knowledge, approval and consent, within this state after such forfeiture and before the reinstatement of the right of such corporation to do business, be deemed and held liable thereon in the same manner and to the same extent as if such trustees, directors, and officers of such corporation, association or organization were partners. *Any corporation, association or organization whose right to do business shall be thus forfeited shall be denied the right to sue or defend in any court of this state, except in a suit to forfeit the charter of such corporation, association or organization. In any suit against such corporation, association or organization on a cause of action arising before such forfeiture, no affirmative relief shall be granted to such corporation,* *association or organization unless its right to do business in this state shall be reinstated as provided herein.* Every contract entered into by or in behalf of such corporation, association or organization, after such forfeiture as provided herein, is hereby declared to be voidable. (emphasis added).

2. An affidavit filed by Thomas J. Dunlap, president of Dunlap Medical, states that he learned in September 2005 that the franchise taxes were in arrears, at which time he completed franchise tax returns for those periods and made payments of franchise taxes due. The payments also included a $15 "reinstatement fee." Dunlap believed the corporation had been reinstated at that point, and the franchise taxes were paid for the years 2006 to 2008. Cancelled checks and photocopies of tax returns are attached to the affidavit. Dunlap states that the amount paid in order to be reinstated in 2008 was $22.12 owed for July 2000—June 2001 reporting period. R. p. 205.

¶ 5 In arguments before the trial judge, Smith & Nephew asserted that Dunlap Medical could not "accrue" a cause of action while suspended and that reinstatement of the corporation would not "relate-back" to the date of suspension except as to causes of action that had accrued before the corporation was suspended. Smith & Nephew asserted that the third sentence of 68 O.S. § 1212(C) means that reinstatement restores only the corporation's power to *defend* suits that arise during the period of disability. Smith & Nephew also claimed that the "lack of corporate identity" during the suspension period means that the corporation cannot accrue a cause of action.

¶ 6 Dunlap Medical maintained that § 1212(C) only deals with capacity to sue or be sued and that once the corporation has been reinstated, its legal disability is removed and the corporation is fully restored to its rights. Dunlap asserts that Oklahoma courts have consistently recognized the "relation-back" component of § 1212 as applicable to both the right to defend and the right to sue, and that the purpose of the penalties is not to punish, but to encourage collection of the tax.

¶ 7 After hearing arguments of counsel, the trial judge dismissed the cross-claims of Dunlap Medical because those claims arose while it was suspended. The trial judge ruled that pursuant to 68 O.S. § 1212(C), claims arising during suspension cannot be pursued after the suspension is lifted. The trial judge disregarded the case relied upon by Dunlap Medical, *Flour Mills, Inc. v. Pace*, 75 F.R.D. 676 (E.D.Okla.1977), stating that the case dealt only with the capacity to sue and not with whether a cause of action can accrue. The trial judge relied upon dicta in *Nichols–Homeshield v. Mid–American Construction Supply, Inc.*, 1982 OK 41, 643 P.2d 309, stating that the case made clear that if a corporation is reinstated it has the right to defend, but specifically did not address whether the corporation has the right to assert a claim that accrued during the time it was suspended.

**3.** 68 O.S. Supp.2008 § 1212(A) provides, in per-

## STANDARD OF REVIEW/ RULES OF CONSTRUCTION OF TAX STATUTES

¶ 8 This case involves interpretation of 68 O.S. § 1212(C), a tax statute. Statutory interpretation is question of law which is subject to a *de novo* standard of review. *State ex rel. Okla. State Dept. of Health v. Robertson*, 2006 OK 99 ¶ 5, 152 P.3d 875, 877; *Fulsom v. Fulsom*, 2003 OK 96 ¶ 2, 81 P.3d 652, 654. Tax statutes are penal in nature. Where there is reasonable doubt about a taxing act's meaning, all ambiguity must be resolved in favor of the taxpayer. Legislative intention, ascertained from a general consideration of the entire act, must be given effect. Courts cannot enlarge the taxing act's ambit to make its provisions applicable to cases not clearly within the legislature's contemplation or to fill lacunae in the revenue law in a manner that would distort the enactment's plain language. *Globe Life & Accident Ins. Co. v. Oklahoma Tax Commission*, 1996 OK 39 ¶ 10, 913 P.2d 1322, 1327. Section 68 O.S. § 1212(C) is penal in nature and is to be strictly construed in favor of those sought to be charged. *Midvale Mining & Mfg. Co. v. Dutron Corp.*, 1977 OK 155, 569 P.2d 442, 443.

## DISCUSSION

¶ 9 Oklahoma's Franchise Code is codified at 68 O.S. § 1201, et. seq. Section 1212(A) of Oklahoma's Franchise Tax Code provides that if the franchise tax is not paid as provided, the Oklahoma Tax Commission *shall* levy and collect a penalty for that delinquency. In that event, the Tax Commission *may* enter an order directing the suspension of the charter of such corporation and the forfeiture of all corporate or other rights inuring thereunder. Thus, the Tax Commission must levy and collect a penalty, but it is given discretion whether to suspend the corporate charter and forfeit corporate rights.

¶ 10 Under § 1212(A) the corporate charter is merely suspended—it is not "forfeited," "cancelled" or "dissolved." It is the corporate rights that are forfeited.[3] Subsection

tinent part:

1212(F) provides that the corporate charter may be "revived" and "reinstated" by payment of the accrued fees and penalties along with payment of a reinstatement fee of $15.00 and a showing of compliance with the laws of this state.[4] The fact that the corporation may be revived and reinstated reflects that the corporation is not legally dead.[5]

¶ 11 In *Corman v. H–30 Drilling, Inc.,* 2001 OK 92, 40 P.3d 1051, plaintiff, on the day of trial, raised the issue of the defendant corporation's suspension and the trial judge refused to hear anything further from the corporation "because it is a non-entity for that purpose" and entered default judgment against it. We reversed the trial judge and determined that it was a denial of the corporation's due process rights not to be allowed

a continuance in order to pay the franchise taxes and defend the suit against it. We reject the argument that the corporation could not accrue a cause of action while suspended because it was legally dead.

■ ¶ 12 Next we turn to the trial judge's ruling that 68 O.S. § 1212(C) bars Dunlap Medical from suing on a cause of action that arose while it was suspended. The "relation-back" component of corporate charter reinstatement appears at § 1120 of Oklahoma's General Corporation Act, 18 O.S. § 1001, et. seq.[6] Section 1120(E) sets out the effect of renewal, revival, extension and restoration of a corporation's certificate of incorporation after suspension for nonpayment of franchise taxes. See, *State Ins. Fund v. AAA Engi-*

---

A. If the report required pursuant to the provisions of Section 1210 of this title is not filed and the tax levied pursuant to the provisions of Section 1203, 1204 or 1205 of this title is not paid within the time provided ... the Oklahoma Tax Commission shall levy and collect a penalty for such delinquency in the amount of ten percent (10%) of the tax due ... In such event, ... the Tax Commission may enter an order directing the suspension of the charter or other instrument of organization ... and the forfeiture of all corporate or other rights inuring thereunder ....

4. Subsection F) of section 1212 provides that after the order of suspension has issued, the charter may only be revived and reinstated upon the payment of the accrued fees and penalties, a reinstatement fee in the amount of $15.00 and a showing of full compliance with the laws of this state. Payment must be made before the end of the life of the corporation according to its charter.

5. Cases have held that as long as there is provision for reinstatement after suspension for non-payment of franchise taxes, the corporation is not "dead." See *Fortinberry Co. v. Blundell,* 1952 OK 80, 242 P.2d 427 and *Watts v. Liberty Royalties Corp.,* 106 F.2d 941 (10th Cir.1939), both applying Delaware law; *Lighthouse Church of Cloverleaf v. Texas Bank,* 889 S.W.2d 595, 600 (Tex.App.–Houston 1994); *Pacific Northwest Bell Telephone Co. v. Rivers,* 88 Idaho 240, 398 P.2d 63, 66 (1964). In *Fortinberry,* we said that it has been generally held that the repeal of a charter for failure to pay a franchise tax does not render the corporate entity entirely dead, but only suspends it powers until revived by compliance with the law, citing *Wax v. Riverview Cemetery Co.,* 24 A.2d 431, 435 (Del.Super.1942).

6. Title 18 O.S. Supp.2008 § 1120 provides, in pertinent part:

(B) Any corporation, at any time before the expiration of the time limited for its existence and any corporation whose certificate of incorporation has become forfeited by law for nonpayment of taxes ... may at any time procure an extension, restoration, renewal or revival of its certificate of incorporation, together with all the rights, franchises, privileges and immunities and subject to all of its duties, debts and liabilities which had been secured or imposed by its original certificate of incorporation and all amendments thereto.

(E) Upon the filing of the certificate in accordance of the provisions of Section 1007 of this title, *the corporation shall be renewed and revived with the same force and effect as if its certificate of incorporation had not become forfeited,* or had not expired by limitation. *Such reinstatement shall validate all contracts, acts, matters and things made, done and performed within the scope of its certificate of incorporation by the corporation, its officers and agents during the time when its certificate of incorporation was forfeited* or after its expiration by limitation, *with the same force and effect and to all intents and purposes as if the certificate of incorporation had at all times remained in full force and effect.* All real and personal property, rights and credits, which belonged to the corporation at the time its certificate of incorporation became forfeited ... and which were not disposed of prior to the time of its revival or renewal shall be vested in the corporation after the renewal or revival, as fully and amply as they were held by the corporation at and before the time its certificate of incorporation became forfeited ... and the corporation after its renewal and revival shall be as exclusively liable for all contract, acts, matters and things made, done or performed in its name and on its behalf by its officers and agents prior to its reinstatement, as if its certificate of incorporation had at all times remained in full force and effect. (emphasis added).

*neering & Drafting,* 1993 OK 142, 863 P.2d 1218, 1220. Section 1120(B) provides that a corporation forfeited for nonpayment of taxes may at any time be reinstated and revive its charter, according to the prescribed procedure so long as its corporate life has not expired. Title *18 O.S. 1120* (E) provides that reinstatement shall validate all contracts, acts, matters and things made, done and performed within the scope of its certificate of incorporation by the corporation, its officers and agents during the time when its certificate of incorporation was forfeited and that, upon reinstatement, a corporation suspended for nonpayment of taxes is revived and renewed as if its certificate never had become forfeited.

¶ 13 The Oklahoma General Corporation Act applies to all corporations unless it is in conflict with the tax code.[7] Smith & Nephew admits that relation-back applies to claims of the corporation that arose before suspension, but contends that the third sentence of § 1212(C) limits the relation-back of the corporation's ability to sue, so that after reinstatement the corporation can sue only on claims that arose before it was suspended. Dunlap Medical, on the other hand, maintains that § 1212(C) only concerns the capacity to sue and be sued and that the trial court construed it too broadly and applied it beyond its scope. The question, then, is whether 68 O.S. § 1212(C) restricts the relation-back of corporate reinstatement. If so, then the provisions of § 1212(C) will control.[8]

¶ 14 We look to the language of the tax statute. Subsection (C) of § 1212 sets forth penalties that apply after the corporate charter is suspended.[9] These penalties are: 1) a corporation whose right to do business is forfeited is denied the right to sue or defend in any court of this state, except in a suit to forfeit the charter; 2) after forfeiture and before reinstatement, the director and officers shall be liable as if partners for any and all debts of the corporation that are created or incurred with their knowledge, approval and consent; 3) as to any suit against the corporation on a cause of action that arose before forfeiture, no affirmative relief shall be granted to the corporation unless it is reinstated; and 4) any contract entered into by or in behalf of the corporation after forfeiture is voidable. Section 1212(B) provides that any person who attempts to exercise the rights or powers of a suspended corporation shall be guilty of a misdemeanor.

¶ 15 At issue is the meaning of the third sentence of § 1212(C), which states: "as to any suit against the corporation on a cause of action that arose before forfeiture, no affirmative relief shall be granted to the corporation unless it is reinstated." Smith & Nephew asserts that this language limits the relation-back of a corporation's reinstatement. Smith & Nephew's premise is that subsection (F) of § 1212 provides a mechanism for reinstatement, and the third sentence of § 1212(C) sets forth the effect of reinstatement: to allow only pursuit of causes of action arising before such forfeiture.

¶ 16 We cannot agree with the interpretation of Section 1212(C) urged by Smith & Nephew and adopted by the trial judge. Section 1212(C) denies the corporation the right to sue and the right to defend in the courts of this state while suspended. If the corporation cannot sue or defend while under suspension, then the corporation cannot receive affirmative relief on *any* cause of action while suspended. Why, then, add a provision that, as to suits on causes of action arising

---

7. Title 18 O.S. § 1002 provides that the provisions of the Oklahoma General Corporation Act shall be applicable to every corporation except to the extent that any conflicts with the provisions of the Oklahoma General Corporation Act and any tax or unclaimed property laws of this state shall be governed by the tax or unclaimed property provisions, including those provisions relating to personal liability of corporate officers and directors.

8. In *State Insurance Fund v. AAA Engineering & Drafting, Inc.,* 1993 OK 142, 863 P.2d 1218, we determined that 18 O.S. § 1120(E) was in conflict with 68 O.S. § 1212(C) insofar as it dealt with corporate officer and director personal liability for contracts knowingly entered into during the period of corporate suspension for non-payment of franchise taxes. Section 1120(E) would have cut off personal liability and thus was in conflict with the specific language of 68 O.S. § 1212(C) imposing such liability.

9. See footnote 1 for text.

before the corporation was suspended, the corporation cannot receive affirmative relief unless it is reinstated? Such language would be mere surplusage unless the intention is to make clear that *even though* the claim arose while the corporation was in good standing, the corporation may not receive affirmative relief in a lawsuit thereon until it has been reinstated. This would counter any argument that a corporation might raise that *because* the claim arose *before* it was suspended it is entitled to affirmative relief thereon, even though suspended.[10] Further, the third sentence implies that a corporation can *defend* suits on causes of actions that arose before it was suspended without being reinstated. Texas courts have so interpreted the identical provision.[11] Oklahoma has not allowed the defense of pre-suspension claims without reinstatement to good standing, however. See, *Corman v. H–30 Drilling, Inc.*, 2001 OK 92, 40 P.3d 1051. If the legislature intended the interpretation urged by Smith & Nephew, the legislature easily could have said so by providing that the corporation, after reinstatement, is barred from recovering on any claim that arose during the period of suspension.[12] It has not done so. 68 O.S. § 1212(C) is penal in nature and is to be strictly construed in favor of those sought to be charged. *Midvale Mining & Mfg. Co. v. Dutron Corp.*, 1977 OK 155, 569 P.2d 442, 443. We will not imply a penalty that is not stated therein.

¶ 17 This interpretation is in accord with the purposes behind the § 1212 penalties. Franchise tax statutes are solely for revenue-raising purposes and the failure to pay franchise taxes is an issue between the corporation and the state. *Midvale Mining & Mfg. Co. v. Dutron Corp.*, 1977 OK 155, 569 P.2d 442, 443. The penalties of § 1212 are to encourage or enforce compliance with the statute by penalizing a corporation for non-compliance. *Id.* We said that the reason for the penalty imposing personal liability on the officers and directors and directors is to aid in the collection of franchise tax by discouraging corporation transactions after suspension. 569 P.2d at 444. In *Corman v. H–30 Drilling, Inc.*, 2001 OK 92, 40 P.3d 1051, we said that the purpose of section 1212(C) is to encourage taxpayers to pay their franchise taxes, not to trap them into losing their right to defend lawsuits, and that once the tax is paid, no further penalty should be imposed. We recognized that § 1212(C) has a "relation-back" component that is applicable to the right to defend and the right to sue provisions of § 1212, citing *Bethlehem Steel Corp. v. Giese*, 1984 OK 28 ¶ 8, 681 P.2d 769, 771. *Corman,* at 1053–54.

¶ 18 We have examined cases from other jurisdictions and have found the courts' rulings dependent on the particular statutes involved.[13] For example, Texas' franchise tax penalty statutes[14] are similar to Okla-

10. See, e.g., *Fortinberry Co. v. Blundell*, 1952 OK 80 ¶ 18, 242 P.2d 427, a case decided prior to enactment of § 1212(C), where a corporation's suit filed in Oklahoma district court to collect on a judgment after its charter had been forfeited in Delaware was determined to be merely ancillary to its earlier lawsuit filed before its charter was forfeited.

11. In *Maloney Mercantile Co. v. Johnson County Savings Bank*, 56 Tex.Civ.App. 397, 121 S.W. 889, 890 (TX Ct.App.1909) the corporation never revived its right to do business after forfeiture. Interpreting a statute which declared that in a suit on a cause of action arising before such forfeiture, no affirmative relief may be granted until the corporation's privileges are revived, the court construed the declaration that "no affirmative relief may be granted" as implying that the restriction should not be extended further, and that therefore, other relief purely defensive may be granted in such cases. The court stated "... we see no reason for the Legislature to have

distinguished between causes of action arising before and after forfeiture unless it was intended that a denial of the right to defend should be limited to causes of action accruing after the forfeiture." *Id.*

12. The legislature specifically limited the "relation-back" of reinstatement as to the personal liability of officers and directors in § 1212(C) so that the officers and directors remain personally liable for debts knowingly incurred during the period of suspension, and the legislature specified that contracts entered into during the suspension period are voidable.

13. For an overview see, Annot., 23 A.L.R. 5th 744 (1994) and Annot., 42 A.L.R.4th 392 (1985).

14. Vernon's Tex.Code Ann., Tax Code §§ 171.251 and 171.2515 forfeit corporate privileges and the right to transact business in the state for non-payment of franchise taxes; Sec. 171.252 provides that if the corporate privileges are forfeited,

homa's, and Texas courts have held that once the right to sue or defend is revived, the corporation may sue or defend *all* causes of action, regardless of whether such causes arose before or during the period of forfeiture. *Goins Construction Company, Inc. v. S.B. McLaughlin Associates, Inc.*, 930 S.W.2d 124, 128 (Tex.Ct.App.1996). See also, *Rosenblum v. Dingfelder*, 111 F.2d 406, 408–409 (2nd Cir.1940), applying Texas law, stating that on payment of the taxes due, the corporation may again sue upon rights accruing *before or during* the time it has been prohibited from doing business. The Supreme Court of Arkansas, addressing a question of first impression after statutory amendments in 1999, held that restoration of corporate status vested the corporation with continuous existence as though the revocation of its charter had never occurred, so that the corporation could pursue its suit for unlawful detainer of property, notwithstanding the defendant's motion to dismiss the suit on the grounds that corporation did not have standing to sue. *Omni Holding and Dev. Corp. v. C.A.G. Investments, Inc.*, 370 Ark. 220, 258 S.W.3d 374 (2007). Smith & Nephew points to the contrary view adopted in *PLM v. The E. Randle Co.*, 797 F.2d 204 (5th Cir.1986), applying Mississippi law. The relevant Mississippi statute provided that upon setting aside of suspension, the organization would be restored "to all rights of which it was deprived" by such suspension, and authorized "to resume all activities" as though the suspension had not been imposed. The Fifth Circuit upheld dismissal of the corporation's suit based on lack of capacity, specifically noting that Mississippi's statute differed from those in jurisdictions reaching the opposite result because it lacked the language making clear that lifting of a suspension retroactively validates activities undertaken during the suspension.

¶ 19 Relation-back of the right to maintain a lawsuit on a cause of action that arose while the corporation was suspended was upheld in *Flour Mills, Inc. v. Pace*, 75

F.R.D. 676 (E.D.Okla.1977). In that case, a suspended corporation brought suit to recover on an open account entered into while it was suspended and the only issue was the plaintiff's capacity to sue, as raised by defendant's motion to dismiss. After considering 68 O.S. § 1212(C) the court concluded that the act of reinstating the plaintiff's right to do business in Oklahoma related back to the date of suspension and restored it to all former powers, including the right to maintain the action. In conclusion, the *Flour Mills* judge noted by way of footnote that "capacity to sue" is to be distinguished from possession of a "cause of action," stating that capacity to sue is plaintiff's personal right to come into court and its cause of action is its right to relief under the facts of the case it brings. The *Flour Mills* judge correctly recognized that being restored to capacity to sue gives the plaintiff the ability to sue in the courts of the state, but does not mean that the plaintiff has a right to relief under the facts of the case.

¶ 20 Lastly, the trial judge's reliance on dicta in *Nichols–Homeshield v. Mid-America Construction Supply, Inc.*, 1982 OK 41, 643 P.2d 309, is misplaced. The sole issue in the case was whether the liability of individual officers and directors imposed by § 1212(C) ended when the corporation paid the taxes and penalty, or when the certificate of reinstatement was issued. We looked at the specific language of § 1212(C) mandating director and officer liability *after* forfeiture and *before* reinstatement, and held that "reinstatement" meant reinstatement by the Tax Commission and that personal liability remained until reinstatement is ordered. We stated that we were not persuaded by the defendants' reference to cases making reinstatement retroactive to the date of suspension, such as *J.D. Simmons, Inc. v. Alliance Corp.*, 79 F.R.D. 547 (W.D.Okla.1978). In *Nichols–Homeshield*, the corporation had not been properly reinstated at the time the debt was incurred, so cases applying reinstatement retroactively were inapposite.

the corporation shall be denied the right to sue or defend in a court of this state and that each director or officer of the corporation is liable for a debt of the corporation as provided by § 171.255; Section 171.253 provides that in a

suit against a corporation on a cause of action arising before the forfeiture of the corporate privileges of the corporation, affirmative relief may not be granted to the corporation unless its corporate privileges are revived under this chapter.

¶ 21 Tax statutes are to be strictly construed and are to be applied most favorably to the one sought to be charged. We find nothing in the language of § 1212(C) that would bar the corporation, after reinstatement, from suing on a claim that arose while it was suspended. The § 1212(C) penalty denies the corporation use of or access to the courts of this state while it is suspended; it does not deny the claim itself. Reinstatement to good standing restores the corporation's ability to sue and to defend in the courts of this state, and the corporation may proceed on any viable claims that it has.

**CERTIFIED INTERLOCUTORY ORDER REVERSED.**

¶ 22 ALL JUSTICES CONCUR.