. 2016 OK CIV APP 10

## TINKER FEDERAL CREDIT UNION, Plaintiff,

v.

## Nancy Lynn JOHNSON, Defendant/Appellee,

and

## Connie Sue Henthorn, Defendant/Appellant.

### No. 113,708.

Court of Civil Appeals of Oklahoma, Division No. 2.

Feb. 18, 2016.

---

Brady R. Hunt, Brady R. Hunt & Associates, Inc., Midwest City, OK, for Defendant/Appellee.

Richard Parr, Tomerlin, High & High, Oklahoma City, Oklahoma and Aharon Hernández Manley, The Manley Law Firm, Oklahoma City, OK, for Defendant/Appellant.

JERRY L. GOODMAN, Vice–Chief Judge.

¶1 Connie Sue Henthorn (First Daughter) appeals the trial court's January 30, 2015, order granting summary judgment to Nancy Lynn Johnson (Second Daughter) on Tinker Federal Credit Union's (TFCU) interpleader petition. The trial court held an account with a pay on death (P.O.D.) provision distributing the account assets to multiple beneficiaries in non-equal shares upon the death of the primary account holder is permissible and that a 2008 amendment to 6 O.S.2011, § 2025, requiring beneficiaries to receive equal shares, is inapplicable to these facts, because the P.O.D. account existed prior to the amendment's effective date.

¶2 The appeal was assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(a)(1), 12 O.S.2011 and Supp. 2013, Ch. 15, App. 1 and *In re Amendments to Oklahoma Supreme Court Rules,* 2013 OK 67, —— P.3d ——. Based on our review of the undisputed facts and law, we affirm the trial court in this first impression case.

## BACKGROUND

¶3 The facts are simple and undisputed.

¶4 Melvin L. Waldroup (Decedent) became a member of TFCU on June 29, 1970, when he opened a joint account, No. xx5234, with his wife Patsy. Melvin was the primary owner. Patsy was designated as survivor. No P.O.D. designations were made. Patsy later died and Decedent became sole owner of the account until his death. He was survived by First and Second Daughters.

¶5 The record contains a P.O.D. provision, dated November 4, 1993, designating both daughters as beneficiaries, with each receiving 50% of the assets upon Decedent's death.[1]

¶6 On September 29, 2006, the P.O.D. was changed to give Second Daughter 75% and First Daughter 25%.

1. The record contains several P.O.D. designations dated November 4, 1993, covering the main account and various sub-accounts. In all but one instance, each daughter was to receive 50%. In one case, Second Daughter was the sole beneficiary of the sub-account.

¶ 7 On September 22, 2008, the P.O.D. was changed to give Second Daughter 20%; First Daughter 20%; and three other persons (perhaps grandchildren) 20% each.

¶ 8 On October 7, 2008, in what appears to be the last change made prior to his death, Decedent amended the P.O.D. to give Second Daughter 75% and First Daughter 25%.[2]

¶ 9 Decedent died October 23, 2013. He left a holographic will nominating both Daughters as co-executors and joint heirs, with equal shares of his estate to each.

¶ 10 We infer that both Daughters made conflicting demands on TFCU for the account assets, because on January 13, 2014, TFCU filed a petition for interpleader. The petition alleged TFCU stands ready to transfer the money in Decedent's account to the designated beneficiaries, but requested the district court determine the rightful shares to be paid. Both Daughters were subsequently ordered to interplead their claims.

¶ 11 First Daughter answered, contending 18 O.S.2011, § 381.39a required the funds be distributed equally between First and Second Daughters. First Daughter later amended her answer to cite 6 O.S.2011, § 2025, set out below, as authority for her claim for an equal share of the assets.[3]

¶ 12 Second Daughter answered and filed a counterclaim against TFCU. Her answer stated 6 O.S.2011, § 2025 was inapplicable under these facts because the deposit agreement predated the enactment of the statute. Therefore, she claimed the P.O.D. designation was proper and enforceable. Her counterclaim against TFCU was dismissed without prejudice by a July 14, 2014, trial court order.[4]

¶ 13 Both Daughters filed motions for summary judgment, each contending she was entitled to judgment as a matter of law. The trial court granted Second Daughter's motion and denied that of First Daughter. First Daughter appeals.

## STANDARD OF REVIEW

¶ 14 We review the trial court's order granting summary judgment under a *de novo* standard. *Wathor v. Mutual Assur. Adm'rs, Inc.*, 2004 OK 2, ¶ 4, 87 P.3d 559, 561. We are further asked to review the trial court's interpretation of a statute.

> [ ]Statutory interpretation is question of law which is subject to a *de novo* standard of review. *State ex rel. Okla. State Dept. of Health v. Robertson*, 2006 OK 99 ¶ 5, 152 P.3d 875, 877; *Fulsom v. Fulsom*, 2003 OK 96 ¶ 2, 81 P.3d 652, 654.

*Williams v. Smith & Nephew, Inc.*, 2009 OK 36, ¶ 8, 212 P.3d 484, 486.

## ANALYSIS

¶ 15 Title 6 O.S.2001, § 2025 was amended effective January 1, 2008. *See*, Laws 2007, HB 1543, c. 80, § 8. The amendments added the following relevant language:

> A. Share and deposit account proceeds that are payable to a beneficiary upon the death of the account owner shall be offered pursuant to the following provisions:
>
> 6. *In order to designate multiple primary P.O.D. beneficiaries for an account, the account* should *be styled as follows:* "(Name of Account Owner), payable on death (or P.O.D.) to (Name of Beneficiary), (Name of Beneficiary), and (Name of Beneficiary), *in equal shares.*";
>
> . . .
>
> 8. Adjustments may be made in the styling, depending upon the number of owners of the account, to allow for survivorship rights, and the number of beneficiaries. *It is to be understood that each beneficiary is entitled to a proportionate share of the account proceeds only after the death of the last surviving account owner, ... All*

---

**2.** The record contains Second Daughter's affidavit stating Decedent had promised she would be taken care of after his death because she was the primary caregiver for her father in his declining years.

**3.** The cited sections in Titles 6 and 18 are similar in requiring P.O.D. beneficiaries share equally. However, Title 18 applies to savings and loan companies, and is inapplicable. Title 6 applies to credit unions such as TFCU.

**4.** Her claim against TFCU was that it had failed to inform Decedent in writing of the statutory changes, as required by 6 O.S.2001 and Supp. 2008, § 2025(A)(12).

*designated primary P.O.D. beneficiaries shall have equal shares....*

12. *After January 1, 2008,* a credit union shall provide *a customer creating a P.O.D. account* with a written notice that *the distribution of the proceeds in the P.O.D. account shall be consistent with the provisions of this section.*

6 O.S.2001 and Supp. 2008, § 2025, now 6 O.S.2011, § 2025. (Emphasis added).

■ ¶ 16 We need only look at § 2025(A)(12) to resolve this issue.[5] Section 2025 requires a credit union to give notice to a customer creating a new P.O.D. account that the P.O.D. designations must be consistent with the rest of § 2025 if that account is created after January 1, 2008. By its own terms, it does not apply to P.O.D. accounts that are already in existence prior to that date, such as this one, or to any account that does not contain a P.O.D. provision.

■ ¶ 17 The parties agree that only one account is involved: No. xx5234, first created in 1970, with the first P.O.D. of record being executed in 1993, well before the January 1, 2008, effective date of § 2025's amendments. We therefore find no merit to First Daughter's contention that each amendment of the P.O.D. designation constitutes a new contract between TFCU and Decedent and thus the date of the most recent P.O.D. amendment controls which law applies. This is so because in order to form a new contract, new consideration must be exchanged. 15 O.S. 2011, § 2. A modification of an original contract must meet the requirements for contract formation. *See, Reeds v. Walker,* 2006 OK 43, ¶ 23, n. 60, 157 P.3d 100, 113, n. 60.

■ ¶ 18 There is no suggestion in this record that additional consideration was exchanged, or that the account was closed and reopened each time the P.O.D. was amended. The account remained the same; only the P.O.D. was amended. The law in effect on the date the account was created is applied. The 2008 amendments do not apply. The P.O.D. instructions are, at most, an executory, contingent contract, subject to modification by the owner until his death, at which time the rights of the parties are fixed. *See,* 15 O.S.2011, § 177.

## NO RETROACTIVE INTENT EVIDENT

■ ¶ 19 We further note the statute is silent regarding the Legislature's intent to make the 2008 amendment retroactive.

> Unless the Legislature clearly expresses otherwise, intervening changes in the law are applied prospectively only, effective on the date of their enactment.
>
> Statutes are typically not given retroactive effect unless the Legislature has made its intent to do so clear. Any doubts must be resolved against a retroactive effect. *Crawford v. Guardian Life Ins. Co.,* 1997 OK 10, ¶ 8, 954 P.2d 1235, 1238....

*CNA Ins. Co. v. Ellis,* 2006 OK 81, ¶ 13, 148 P.3d 874, 877.

> Remedial or procedural statutes may operate retrospectively only where they do not create, enlarge, diminish or destroy vested rights. A substantive change that alters the rights or obligations of a party cannot be viewed as solely a remedial or procedural change and cannot be retrospectively applied. *Welch v. Armer,* 1989 OK 117, ¶¶ 27–28, 776 P.2d 847, 850.... In addition, nothing in the statute reveals a legislative intent that it be retroactive....

*Sudbury v. Deterding,* 2001 OK 10, ¶ 19, 19 P.3d 856, 860; *Reimers v. State, ex rel. Dep't of Corr.,* 2011 OK CIV APP 83, ¶ 31, 257 P.3d 416, 421.

¶ 20 Applying this principle to the case at bar, we note that when the P.O.D. provision went into effect upon Decedent's death, both Daughters became holders of a vested property right. Retroactive application of the 2008 amendment to § 2025 to encompass accounts which pre-existed that amendment would have the effect, in this case, of increasing the rights of one at the expense of the other, which would be contrary to the clear terms of the contract between TFCU and Decedent.

¶ 21 Therefore we hold that a credit union account created prior to January 1, 2008, containing a P.O.D. designation is not subject

**5.** Neither party cites any authority addressing the issue now before us.

to the requirements of the 2008 amendment to § 2025 that the P.O.D. shares be equal. Under these facts, an extant P.O.D. account which contains unequal shares remains enforceable against the credit union, which must pay the designated beneficiaries in accordance with the P.O.D. designation, as unequal as it may be.[6]

## CONCLUSION

¶ 22 We conclude, as a matter of law, the trial court correctly interpreted 6 O.S.2011, § 2025 and properly declined to apply the 2008 amendment to that statute to the P.O.D. account in question. The grant of summary judgment was correct and is affirmed.

¶ 23 **AFFIRMED.**

FISCHER, P.J., and WISEMAN, J., concur.

6. We need not address any other issues raised by the parties.