STATE of Oklahoma ex rel. OKLA-
HOMA BAR ASSOCIATION,
Complainant,

v.

L. Fred BOETTCHER, Respondent.

SCBD No. 3662.

Supreme Court of Oklahoma.

Sept. 25, 1990.

## MEMORANDUM ORDER

OPALA, Vice Chief Justice.

Respondent-lawyer stands charged with violating the terms of DR 5–103(B).[1] The cited rule prohibits attorneys from finan-cially assisting clients, except in certain circumscribed instances.

According to the stipulated facts, respondent-lawyer [respondent], who represented a claimant pressing a workers' compensation claim, helped his client secure a short-term loan after the latter had expressed a need for financial assistance to save his home. Respondent contacted Sanrah Finance Company (Sanrah) which lent that client $4,500.00 at fifteen percent interest.

Sanrah was an entity created primarily to lend money to respondent's clients. Neither respondent nor his law firms guaranteed the loans. Each borrower was individually responsible for repayment. The loans were extended to respondent's clients while a lawyer/client relationship subsisted between them and the respondent and the latter believed the client's financial need to be urgent.

Sanrah's service agent's and respondent's official address are the same. Respondent, who was not a Sanrah shareholder, officer or director, is a member of two partnerships: Boettcher and Brune and Boettcher and Ryan. When Sanrah's capital came to be depleted, the Boettcher and Brune pension plan began serving as the company's creditor to funnel funds in an ongoing relationship from at least January 31, 1987 through October 31, 1989. Between September 18, 1984 and November 8, 1989 Sanrah's loans to some 373 clients of respondent's firms amounted to $413,-413.56.

From his October 8, 1988 compensation award of $19,895.00 the client involved in this complaint initially received only $1,825.15. This amount was deposited in respondent's trust account. A $1,275.15 check was then issued to that client. The rest of the award was kept for use in

---

**1.** Disciplinary Rule 5–103(B), 5 O.S.1981, Ch. 1, App. 3, provides:

"(B) *While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client,* except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ulti-mately liable for such expenses." (Emphasis added.)

The conduct which forms the foundation for the charges against this respondent took place when the Code of Professional Responsibility was in force. The Rules of Professional Conduct, effective from July 1, 1988, now supersede the Code. The present post-code counterpart of DR 5–103(B), *supra,* is Rule 1.8(e), Rules of Professional Conduct, 5 O.S.Supp.1988, Ch. 1, App. 3–A. The terms of both norms are identical.

paying his $250.00 doctor's bill and for a $300.00 repayment to Sanrah.

When on May 24, 1989 the balance of that client's unpaid award came to be partially commuted to a lump sum of $4,973.75, the money was again deposited into respondent's trust account. Of the latter sum, $4,926.11 was remitted by check to Sanrah, and the remainder of $47.64 sent to the client.

Respondent cooperated fully in the Bar's investigation of this grievance and has now severed his ties with Sanrah. According to the stipulation before us, once Sanrah's debt to him shall have been repaid, neither he, his firms, nor the Boettcher and Brune pension plan will have any involvement with that loan company. He and his law firms will forthwith cease using Sanrah to secure loans for their needy clients.

The parties' stipulation concedes, and we agree in this legal conclusion, that respondent's conduct violates DR 1–102(A)(1)[2] and DR 5–103(B). Respondent's law firms' loans to Sanrah gave him a financial interest in that company's solvency status. The respondent's connection with loan transactions between his clients and Sanrah violates the cited disciplinary rules. It constitutes "indirect" law firms' loans to the borrowers-clients for a purpose that is not sanctioned by DR 5–103(B).

The parties have agreed to recommend that public reprimand *cum* payment of costs is to be imposed as respondent's disciplinary sanction. Their recommendation stands approved. Respondent is publicly reprimanded for the misconduct of which he stands charged; he is directed forthwith to pay the costs incurred in the case.

HARGRAVE, C.J., and HODGES, LAVENDER, SIMMS, DOOLIN and SUMMERS, JJ., concur.

ALMA WILSON and KAUGER, JJ., dissent.

---

**2.** The terms of 5 O.S.1981, Ch. 1, App. 3, DR 1–102(A)(1), provide:

"(A) A lawyer shall not:
(1) Violate a Disciplinary Rule."