961 P.2d 208 (1998)
1998 OK 59
STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
Joseph O. MINTER, V, Respondent.
No. SCBD 4229.
Supreme Court of Oklahoma.
June 9, 1998.
As Corrected June 12, 1998.
Joseph O. Minter, V, Madill, pro se.
Dan Murdock, General Counsel, Mike Speegle, Asistant General Counsel, Oklahoma Bar Association, Oklahoma City.
*210 HODGES, Justice.

I. OVERVIEW
¶ 1 Complainant, Oklahoma Bar Association, alleged two counts of misconduct warranting discipline against respondent attorney, Joseph O. Minter, V (Respondent). The Complainant sought enhancement of the discipline based on two prior reprimands by the Professional Responsibility Commission (Commission). The Professional Responsibility Tribunal (PRT) found that Respondent's conduct violated Rule 5.2 of the Rules Governing Disciplinary Proceedings, Okla. Stat. tit. 5, ch. 1, app. 1-A and Rules 1.1, 1.3, and 1.4 of the Oklahoma Rules of Professional Conduct, Okla.Stat. tit. 5, ch. 1, app. 3-A (1991).
¶ 2 In fashioning the degree of discipline to be recommended in the current proceedings, the PRT found the Respondent's prior reprimands to be a valid consideration pursuant to Rule 1.7 of the Rules Governing Disciplinary Proceedings. The PRT recommended that the Respondent be suspended from the practice of law for six months. We find the six month suspension too harsh and find a public reprimand to be the appropriate discipline.

II. FACTS
¶ 3 The uncontested facts are as follows. The Respondent was retained by Mary Smith to represent her son Gene Youngblood on a charge of first degree murder in the District Court of Coal County. Youngblood was convicted at a jury trial and on December 22, 1995, was sentenced to life in prison *211 without parole. The Respondent filed a notice of intent to appeal with the District Court in Coal County. However, he failed to also file a designation of record in the district court as required by law. Because the Respondent failed to file the proper papers to perfect the appeal, the Oklahoma Appellate Indigent Defense System (OAIDS) did not accept the case.
¶ 4 After Youngblood was sentenced, Mary Smith attempted to contact the Respondent numerous times both by telephone and letter regarding the appeal. Respondent did not return any of her calls or respond to any of her letters. As stated, because of Respondent's failure to properly perfect the appeal, OAIDS refused to accept the case.
¶ 5 On May 21, 1996, Mary Smith filed a grievance with the Complainant against the Respondent. After the grievance was filed, the Complainant's office sent three letters to Respondent. The first letter was sent to the Respondent on June 4, 1996, and he was given two weeks to respond to the grievance in writing. On July 1, 1996, another letter was sent to the Respondent informing him that Rule 5.2 of the Rules Governing Disciplinary Proceedings required an answer within twenty days. On July 23, 1996, the Complainant sent a third letter by certified mail warning the Respondent that a failure to respond would be a ground for discipline. The Respondent did not respond to any of the three letters.
¶ 6 Because the Respondent failed to respond to its request for information, the Complainant had to subpoena him for a deposition on September 9, 1996. At the deposition, Respondent was cooperative and testified he had no legal excuse for his failure to respond to the Complainant's letters.
¶ 7 On the same day as the deposition, Respondent filed an application for an appeal out of time on behalf of Mr. Youngblood. On September 17, 1996, Respondent received a letter from OAIDS informing him that his application and supporting documents were incorrect and that OAIDS again declined to accept appointment. Finally, the application to file the appeal out of time was granted on October 30, 1996.

III. PROCEDURAL HISTORY
¶ 8 The Complainant filed a formal complaint against the Respondent alleging two counts of violations of the ORPC and asking an enhancement of the discipline based on the Respondent having received two prior private reprimands from the Commission: one in OBAD No. 983, on April 27, 1990, and the other in OBAD No. 1246 on March 29, 1996. Only the date, the case number, and the fact the private reprimands existed were stated in the formal complaint. None of the allegations, supporting evidence, mitigation, or aggravation regarding the two private reprimands was set forth.
¶ 9 Prior to the hearing the Complainant offered to recommend to the PRT that the Respondent receive a private reprimand to be administered by this Court. The Respondent initially agreed to the stipulations and a private reprimand. After being informed that this Court was not bound by the stipulations, Respondent withdrew his consent to the stipulations and recommended discipline. The PRT heard the matter on April 9, 1997, and found that the Respondent had violated Rule 5.2 of the Rules Governing Disciplinary Proceedings and Rules 1.1, 1.3, and 1.4 of the Oklahoma Rules of Professional Conduct. The PRT recommended that the Respondent be suspended from the practice of law for a period of six months.

IV. ISSUES
¶ 10 The Respondent raises the following two issues on the merits of this proceeding before this Court. First, the use of the two private reprimands before the Commission violates his due process rights. Second, the current disciplinary process denies equal protection for attorneys who reside in rural areas. The Respondent also argues that the appropriate discipline should be a reprimand, not a six-month suspension.
¶ 11 The Respondent submits that there are a number of relevant facts not before this Court. He has incorporated these into his brief and asks this Court to consider them. The Respondent had ample opportunity at the hearing before the PRT to *212 submit any facts that he wished this Court to consider. This Court will not consider facts not part of the record before this Court. State ex rel. Oklahoma Bar Ass'n v. O'Neal, 1993 OK 61, ¶ 11, 852 P.2d 713, 716.
¶ 12 This Court has the power to return the case for the taking of further evidence when the record is insufficient "for a thorough probe into essential facts and for crafting the appropriate discipline." State ex rel. Oklahoma Bar Ass'n v. Eakin, 1995 OK 106, ¶ 9, n. 13, 914 P.2d 644, 648 n. 13. Because the record is adequate for de novo review, it is not necessary to return the case to the PRT for further proceedings. See id. at ¶ 10, 914 P.2d at 648. We review de novo the record as presented to this Court.

V. ENHANCEMENT BASED ON PRIOR DISCIPLINE

A. Purpose of Rule 6.2 of the Rules Governing Disciplinary Proceedings
¶ 13 "If prior conduct resulting in discipline . . . is relied upon to enhance discipline, the acts or conduct relied upon shall be set forth" in the formal complaint. Rule 6.2, Rules Governing Disciplinary Proceedings, Okla.Stat. tit. 5, ch. 1, app. 1-A (1991). The purpose of this rule is to apprise this Court of all the facts necessary to shape the proper discipline.
¶ 14 At the PRT hearing, the Complainant submitted copies of the two private reprimands which contained the facts surrounding the reprimands. The reprimand issued on April 27, 1990, recited that the Respondent had neglected to file a case which he had agreed to handle within the statute of limitations period. It also recited that the Respondent's answer to the Complainant's inquiry indicated that he had solved the matter and was still looking forward to representing the client.
¶ 15 The reprimand issued on March 29, 1996, recited that the Respondent had neglected to file a formal divorce decree for several months after the divorce was awarded. Because of the Respondent's neglect, the matter was not formally resolved for more than one year after the divorce was awarded. Further, in violation of the Rules Governing Disciplinary Proceedings, the Respondent failed to respond to the Complainant's requests and failed to cooperate with the investigation. The submission of the private reprimands provides this Court with the necessary information regarding these previous reprimands to determine the proper discipline.
¶ 16 Even though the Complainant did not comply with Rule 6.2 of the Rules Governing Disciplinary Proceedings by failing to include in the complaint the allegations on which the private reprimands were based, there is no evidence that the Respondent was prejudiced by this omission. Because the purpose of attorney disciplinary proceedings is for the "protection of the courts, the public and the profession . . . strict rules of procedure should be relaxed to the end" that the determination of the proper discipline is based "on the legal and ethical merits," State ex rel. Oklahoma Bar Ass'n v. Brandon, 1969 OK 28, ¶ 13, 450 P.2d 824, 828; State ex rel. Oklahoma Bar Ass'n v. Bradley, 1987 OK 78, ¶ 12, 746 P.2d 1130, 1132, when an attorney's due process rights are not violated.
¶ 17 While this Court agrees with the Respondent that the Complainant should follow the rules which apply to proceedings brought by it, the purpose for including facts of prior disciplinary proceedings in the complaint is to aid this Court in its decision-making process. The purposes of attorney discipline would not be met if this Court did not consider the prior reprimands. For these reasons, it is proper that this Court consider the Respondent's two previous private reprimands in formulating the proper discipline.

B. Due Process
¶ 18 The Respondent argues that the use of his prior discipline violates his due process rights. The Respondent's argument, while elusive, appears to be that as a result of his agreeing to a private reprimand by the Commission, he was denied his right to certain procedural safeguards. However, the Respondent does not argue that his rights were violated because the complaint did not *213 put him on notice of the charges against him. Even though the complaint recited only the fact of the prior disciplines and not the underlying details of the proceedings, the complaint was sufficient to alert the Respondent that the two private reprimands could be used as enhancement of his discipline. See Eakin, 1995 OK 106, ¶ 15, 914 P.2d at 649.
¶ 19 "The fundamentals of due process are applicable in lawyer disciplinary proceedings." Eakin, 1995 OK 106, ¶ 15, 914 P.2d at 649. Due process in attorney-disciplinary "proceedings contemplates a fair and open hearing before a trial panel with notice and an opportunity to present evidence and argument, representation by counsel, if desired, compulsory process for obtaining favorable witnesses, information concerning the claims of the opposing party, reasonable opportunity to be heard, and the right to confront the unfavorable witnesses." State ex rel. Oklahoma Bar Ass'n v. Lobaugh, 1988 OK 144, ¶ 15, 781 P.2d 806, 811. The due process rights afforded attorneys in disciplinary proceedings may be waived. See D.H. Overmyer Co., Inc. of Ohio v. Frick Company, 405 U.S. 174, 185-86, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972); Illinois v. Allen, 397 U.S. 337, 342, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).
¶ 20 Attorney-disciplinary proceedings are sui generis, having elements of both criminal and civil proceedings. Lobaugh, 1988 OK 144, ¶ 15, 781 P.2d at 811. Even though attorney disciplinary proceedings are sui generis, this Court has utilized criminal law jurisprudence in analyzing due process challenges in disciplinary proceedings. Eakin, 1995 OK 106, ¶ 15, n. 19, 914 P.2d at 649, n. 19; Lobaugh, 1988 OK 144, ¶ 15, 781 P.2d at 811. In the context of a criminal proceeding, the United States Supreme Court has recognized the benefit of plea agreements to both the prosecutor and defendant. Bordenkircher v. Hayes, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Likewise, in the two previous proceedings in which the Respondent was disciplined, he avoided the costs of the hearing and a possibly more severe discipline.
¶ 21 An attorney's agreement to waive his rights to due process "must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the [Complainant's] business (e.g. bribes)." See Mabry v. Johnson, 467 U.S. 504, 509, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) quoting Brady v. United States, 397 U.S. 742, 752, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Such an agreement can be accosted only when an attorney has not been fairly apprised of the consequences of the agreement. See Mabry v. Johnson, 467 U.S. 504, 509, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984). The fact that an attorney may be deterred from exercising a legal right because of the risk of a more severe discipline is not a threat which will invalidate the agreement. Bordenkircher, 434 U.S. at 364.
¶ 22 In the present case, the Respondent was informed that the two private reprimands before the Commission would be "preserved and . . . considered in any future disciplinary proceeding against [him]." Thus, the Respondent was fully informed of the consequences of agreeing to a private reprimand before the Commission. The Respondent was given the opportunity to exercise his right to rebut the charges contained in the two previous reprimands at the time of the charges. He could have presented evidence surrounding the allegations in those proceedings at the hearing in the current proceedings. He waived this right at the time the charges were pending in the prior proceedings by agreeing to the private reprimands. He again waived this right by not submitting any evidence at the hearing in the present proceedings.
¶ 23 The Respondent's due process rights were not violated merely because he was not informed of all the potential evidence against him, and he risked suffering a harsher discipline if he did not agree to the private reprimand. We find that the Respondent's due process rights are not violated by the use of his previous two private reprimands.

*214 VI. EQUAL PROTECTION
¶ 24 The Respondent argues that the current disciplinary process denies equal protection for rural members of the bar as a class. The Respondent offers numerous statistics showing that the impact of the current proceedings is that lawyers practicing in rural areas are more likely to be disciplined than lawyers practicing in urban areas.
¶ 25 The Equal Protection Clause of the United States Constitution requires that states treat all persons similarly situated the same. Vacco v. Quill, 521 U.S. 793, 117 S.Ct. 2293, 2297, 138 L.Ed.2d 834 (1997). Generally, "laws that apply evenhandedly to all `unquestionably comply' with the Equal Protection Clause." Id. at ___, 117 S.Ct. at 2298. While some laws are facially nondiscriminatory, they may be applied in an unconstitutional manner. Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 272, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). A facially neutral law that does not discriminate based on a fundamental right or suspect classification will be upheld if it is rationally based. Id. Mere statistical difference in the number of attorneys practicing in rural areas compared to those in urban areas is insufficient to warrant strict scrutiny.
¶ 26 "A license to practice law is a privilege burdened with conditions." Lobaugh, 1988 OK 1994, ¶ 11, 781 P.2d at 810; Theard v. United States of America, 354 U.S. 278, 281, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957). Lawyers are not a suspect class. See id. Oklahoma's attorney disciplinary process does not infringe on fundamental rights or involve suspect classifications.
¶ 27 The goals of the process are "deterrence of others and protection of the public, of the courts and of the legal profession." State ex rel. Oklahoma Bar Ass'n v. Wolfe, 1997 OK 47, ¶ 24, 937 P.2d 988, 993. These goals are rationally related to the disciplinary process. See Theard, 354 U.S. at 281, 77 S.Ct. 1274. Thus, Oklahoma's attorney disciplinary process does not violate the Respondent's right of equal protection. See Feeney, 442 U.S. at 272, 99 S.Ct. 2282.

VII. APPROPRIATE DISCIPLINE
¶ 28 After a thorough review of the record, we hold that the record before this Court is a complete record of the proceedings and sufficient for de novo review. Eakin, 1995 OK 106, ¶¶ 9-10, 914 P.2d at 648. We find that, by clear-and-convincing evidence, the Respondent has violated Rule 5.2 of the Rules Governing Disciplinary Proceedings by failing to respond to the Complainant's request for information. The Respondent also violated Rules 1.1 and 1.3 of the Rules of Professional Conduct by failing to timely and properly file a notice of intent to appeal and Rule 1.4 of the Rules of Professional Conduct by failing to properly respond to a client's request for information. Further, as enhancement to discipline, the Respondent has previously received two private reprimands from the Commission. In both cases, the private reprimands recite that the Respondent neglected clients' matters and failed to respond to the Complainant's requests for information.
¶ 29 Although the PRT recommended that the Respondent be suspended from the practice of law for six months, the Complainant implicitly recommends a less severe discipline by relying only on cases which have resulted in a public reprimand. In cases of similar misconduct to the present case, this Court has imposed a public reprimand. In State ex rel. Oklahoma Bar Ass'n v. Glass, 1992 OK 74, 832 P.2d 831, an attorney received a public censure and imposition of costs for failing to withdraw after being dismissed from a case and failing to respond to requests for information. The attorney had previously received a private reprimand from the Commission. In State ex rel. Oklahoma Bar Ass'n v. Angel, 1993 OK 2, 848 P.2d 549, this Court imposed a public reprimand on an attorney who had failed to respond to a motion for summary judgment and had previously received two private reprimands from the Commission.
¶ 30 The actions of the respondent in the present case are analogous to those of the respondents in State ex rel. Okla. Bar Ass'n v. Borders, 1989 OK 101, 777 P.2d 929, and State ex rel. Okla. Bar Ass'n v. McManus, 1993 OK 66, 852 P.2d 727. In Borders, the *215 attorney had failed to communicate with the mother of a client who was a criminal defendant and with the Public Defender's Office and had failed to cooperate with another client whose property the attorney had lost. Because the acts of the attorney were neglect rather than affirmative acts of misconduct, this Court publicly reprimanded the attorney.
¶ 31 As in Borders, the attorney in McManus was disciplined for acts of negligence rather than affirmative acts of harmful misconduct. Among other things, the attorney in McManus failed to respond to requests for information from the Oklahoma Bar Association, failed to answer a letter from a client's new attorney, failed to return a client's telephone calls, and failed to prosecute a client's case so that the case was dismissed and had to be refiled. The attorney in McManus, was publicly reprimanded.
¶ 32 Like the attorneys in McManus and Borders, the Respondent has committed no affirmative acts of harmful misconduct. Where there has been no affirmative act of harmful conduct, disciplined attorneys have received public reprimands even where they had previous private reprimands from the Professional Responsibility Commission. Angel, 1993 OK 2, 848 P.2d 549; Glass, 1992 OK 74, 832 P.2d 831.
¶ 33 The purpose of discipline is "to preserve confidence and trust in the bar[,] to protect the public and the courts[, and to deter] misconduct by both the lawyer being disciplined and other members of the bar." State ex rel. Okla. Bar Ass'n v. Busch, 1993 OK 72, ¶ 16, 853 P.2d 194. This Court finds that a public reprimand satisfies the purpose of discipline.

VIII. COSTS
¶ 34 The Respondent argues that he should only be required to pay costs of $0.15 a mile, the rate for subpoenaed witnesses, for the members of the PRT, rather than the rate of $0.30 a mile requested. The Respondent fails to give any legal authority supporting his position but attacks the difference in the mileage rates for subpoenaed witnesses and members of the PRT as irrational.
¶ 35 The law allows parties not similarly situated to be treated differently. See Vacco, 521 U.S. at ___, 117 S.Ct. at 2297. Subpoenaed witnesses are present because they are ordered to appear. In addition to the mileage allowance, they are paid a witness fee. Members of the PRT are voluntarily present, serve without compensation, do not receive a fee for their services, only receive reimbursement for reasonable expenses, and serve a different role from that of subpoenaed witnesses. The mileage reimbursement rate for members of the PRT was $0.30 a mile, the rate set for tax purposes by the Internal Revenue Service at the time of the hearing in this matter. Based on the different status of a subpoenaed witness and a member of the PRT, the difference in mileage for the two is justified.

IX. CONCLUSION
¶ 36 Because of the current violations and because of the Respondent's pattern of neglecting client's matters and requests for information, this Court finds the Respondent should be publicly censured. The Respondent is ordered to pay $1,070.74 which is the reasonable cost incurred in these proceedings.
RESPONDENT PUBLICLY CENSURED; ORDERED TO PAY COSTS.
¶ 37 KAUGER, C.J., and SUMMERS, V.C.J., and HODGES, LAVENDER, HARGRAVE and ALMA WILSON, JJ., concur.
OPALA, Justice, with whom SIMMS and WATT, JJ., join, dissenting.
¶ 38 The discipline meted out today is much too lenient. I would direct that this repeat offender be suspended from the practice of law for an appreciable period. See State ex rel. Oklahoma Bar Ass'n v. Wolfe, 1996 OK 75, 919 P.2d 427, 435 (OPALA, J., dissenting); State ex rel. Oklahoma Bar Ass'n v. Holden, 1996 OK 88, 925 P.2d 32, 38 (OPALA, J., dissenting).