OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SMITH

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SMITH
2016 OK 19
Case Number: SCBD-6306
Decided: 03/01/2016
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2016 OK 19, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 




STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
DEREK BRION SMITH, Respondent.
PROFESSIONAL DISCIPLINARY PROCEEDING
¶0 The Oklahoma Bar Association filed a complaint in this Court alleging respondent, licensed to practice law in this State, committed specific acts of professional misconduct, including a failure to provide (1) competent representation, (2) diligent and prompt representation, and (3) prompt and reasonable communication with clients. The Bar also alleged respondent collected unreasonable fees for work not performed and violated rules of professional conduct. The alleged acts of misconduct were based upon facts alleged in seven grievances filed with the Bar Association by former clients of respondent. The Bar Association also alleged for purposes of enhancement of discipline a private reprimand the respondent received in 2013 for professional misconduct. The Bar also alleged respondent failed to timely respond to the Bar's requests for information. Respondent did not file a response to the Complaint in this Court. Respondent did not appear at his scheduled trial panel hearing or file a post-hearing brief in this Court. The trial panel recommended respondent be disbarred from the practice of law. This Court finds several violations of the lawyer's duty of ethical conduct and imposes disbarment and costs.
RESPONDENT DISBARRED; COSTS IMPOSED 
Stephen L. Sullins, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Complainant.
Derek Brion Smith, Oklahoma City Oklahoma, No Appearance.
EDMONDSON, J.
¶1 Respondent is licensed to practice law in this State. This Court finds several violations of the lawyer's duty of ethical conduct by respondent, and imposes upon him disbarment and costs.
¶2 Seven of respondent's former clients filed grievances against him with the Oklahoma Bar Association. Respondent did not respond to the clients' grievances as requested by the Bar Association. The Oklahoma Bar Association filed a formal Complaint in this Court against Respondent alleging seven counts of professional misconduct relating to seven of his former clients. Respondent did not file a response to the Complaint in this Court. Respondent did not appear at his scheduled hearing before the trial panel of the Professional Responsibility Tribunal. Several witnesses testified at the trial panel hearing. The Bar Association filed a motion for the allegations of the Complaint to be deemed admitted by respondent, and the trial panel granted the motion. The trial panel's report was filed in this Court, and the Oklahoma Bar Association filed its brief. The Bar Association filed an application for an order assessing its costs against respondent. Respondent filed no brief or any other filing in this Court. 
Count I - McCuddy's Grievance
¶3 Queta McCuddy paid respondent a fee of $2,500 for representation in a child custody dispute. Respondent filed a motion to modify child custody for clarification of joint custody issues and he appeared at one hearing. Respondent failed to appear at a scheduled meeting of counsel and parties on the matter. McCuddy tried numerous times to contact respondent by text messages, emails, and phone calls. After a few months of these unsuccessful efforts she decided to hire a different lawyer and McCuddy's father eventually obtained her file from respondent at respondent's residence. McCuddy testified she was required to pay additional fees to her new lawyer and the child custody matter had been completed with new counsel. 
Count II - Patton's Grievance
¶4 Patton paid respondent $1,500 as a retainer for respondent to file a paternity proceeding so Patton could obtain custody of children. Patton stated the matter was an "agreed paternity" between him and the mother for the purpose of obtaining a judicial order awarding child custody. Patton testified respondent took four to six months to serve process on the mother. He testified that he was informed that a temporary support order was entered and he wanted to meet with respondent to find out the provisions of the temporary order and what his obligations were, but "I could never get a return of a phone call or text message." He testified he "never knew how much child support I was supposed to be paying." He testified that after getting a copy of the temporary order the respondent would not return his phone calls or otherwise contact him. 
¶5 Patton hired a new lawyer and paid him $1,500 to complete the legal matter. Patton sent respondent a text message requesting an invoice or an accounting for his work, but respondent never replied. Patton testified that respondent's lack of timely communication concerning support obligations and the issue of unpaid support resulted in Patton being unnecessarily placed in a situation requiring unusual efforts on Patton's part to meet past and current support obligations. He testified his new lawyer was able to conclude the legal matter with a "favorable outcome" for Patton. 
Count III - Haynes' Grievance
¶6 Haynes alleged in her grievance that she paid a $1,500 fee for representation in a Grady County District Court proceeding involving child support and child daycare. She alleged her efforts were unsuccessful when trying communicate with respondent concerning errors in a proposed court order.
¶7 The efforts of the Bar Association were unsuccessful to include telephonic testimony from Haynes during the hearing. The Bar Association filed a motion to have all allegations against respondent in all Counts of its Complaint be deemed admitted by respondent's failure to file a response to the Complaint. The trial panel granted the motion.
Count IV - Conley's Grievance
¶8 Respondent represented Conley in his first divorce. Conley's ex-wife filed an application concerning child support and Conley paid respondent $1,500 for legal representation. Conley testified he paid respondent "and then he never filed any papers or anything like that." His ex-wife later informed Conley that "nobody ever filed anything" and he hired a different lawyer.
¶9 Conley explained he tried to contact respondent during the time he was seeking a new lawyer, but respondent "never replied back." Conley testified respondent "never done anything for me on that or gave me my money back." Conley asked his new lawyer to contact respondent and request a refund of his money. Respondent did not reply to the requests from Conley's new lawyer. 
¶10 An investigator for the Bar Association identified an exhibit of respondent's bank accounts, including personal and trust accounts. They showed Conely's $1,500 check was deposited into respondent's personal joint account with his wife and not his trust account. 
Count V - Hyden's Grievance
¶11 Hyden paid respondent a $2,000 retainer. Respondent did not have a written fee agreement with Hyden and told her he would inform her how much he was going to bill her as her child custody matter progressed. She testified that respondent appeared at two hearings. During the one hearing she and respondent both appeared, respondent made a disparaging comment about her to the judge. She said she had no idea why respondent made the comment to the judge, her motion was denied, and respondent did no further work on her case. She testified there were five hearings, and respondent did not appear at three of the hearings
¶12 Hyden tried numerous times to contact respondent concerning her case and his failure to appear at hearings. She attempted to contact him by telephone, email, and faxes: "I tried everything I knew how. I could not get ahold of this man." She hired another lawyer and paid him $3,000. She testified to her belief that respondent's neglect hurt her case because it happened during the time of an investigation by the Department of Human Services when an active lawyer could have helped the family. She testified to her belief respondent did not earn the $2,000 she paid him.
Count VI - Lenhart Grievance
¶13 Lenhart hired respondent to obtain judicial enforcement of Lenhart's previously awarded right for child visitation, and for additional visitation. Lenhart paid $2,000 to respondent. Respondent informed Lenhart of difficulties in serving process on his ex-wife. Respondent filed a document in the District Court on behalf of Lenhart. 
¶14 Lenhart testified concerning leaving voice messages on respondent's phone with no return phone calls, and his numerous trips to respondent's office and being told no time was available to meet with him. Neither respondent or Lenhart appeared at the scheduled hearing on the matter. The assigned judge ruled in favor of Lenhart's ex-wife, and ruled she was entitled to an attorney's fee against Lenhart. 
¶15 Lenhart then hired two other lawyers who worked together as co-counsel. He paid them $25,000. He testified on the positive influence in the case caused by the appointed guardian ad litem. He testified he is able to have visitation with his child due to the efforts of his two new lawyers. He also testified he wrote a letter to respondent and pointed out respondent's failure to appeal at a scheduled hearing, respondent had it rescheduled and again failed to appear, and respondent did not tell Lehnart to attend the hearing. He wrote to respondent requesting the return of $1,000, one-half of the amount previously paid. Respondent did not return any money or contact Lenhart.
Count VII - Meade Grievance
¶16 Meade used respondent for legal services on three occasions. He testified that the first two times he hired respondent things "went well" except "it kind of got to the point where I would call him and he wouldn't really call me back." The third time he hired respondent for a custody/visitation matter involving Meade's minor child. Meade paid respondent $1,500 for this matter.
¶17 After a hearing on the matter, respondent was directed to prepare an order for the judge's signature. Meade testified concerning his numerous attempts to contact respondent, and his need to get a copy of the order because his child's school needed a copy of the order showing Meade's sole custody of the child. Meade eventually obtained a copy of the order directly from the judge, and respondent later contacted Meade to provide him a copy. Meade hired a new lawyer after his difficulties with respondent.
Additional Testimony
¶18 A person employed as a secretary in an office with respondent and another lawyer testified. She received and signed for certified mail sent to respondent, including mail from the Bar Association. She routinely placed respondent's mail on his desk where respondent received the mail. She said she remembered the Bar Association mailings to respondent because they "were the big flat brown ones" with a confidentiality stamp and they were placed "in plain view on his desk where he could see them."
¶19 An investigator for the Bar Association testified at the hearing. Since 2007 she has investigated professional grievances filed against respondent. She testified concerning many attempts to contact respondent. These attempts included regular mail, certified mail, telephone messages, and emails. The mail was sent to respondent's address listed on the Oklahoma Bar Association roster. 
¶20 Some mailings to respondent were returned to the Bar Association and respondent did not respond to them. Upon the investigator discovering respondent's new business address, the Oklahoma Bar Association sent the mailings to this address in addition to simultaneously sending them to his roster address. Respondent moved to a new address in November 2014, but did not change his roster address until May 2015. Respondent did not respond to several mailings or emails, or voicemail. 
¶21 In response to a strongly worded email from the investigator stating respondent's need to contact the Bar, respondent replied by email and stated he had not received the mailings from the Bar and he would provide a response to a grievance. Respondent did not respond to the grievances. Respondent did not respond to telephone calls made to him by the Bar Association. The Bar Association subpoenaed respondent for a deposition and he appeared. 
¶22 Respondent appeared at the Oklahoma Bar Center one day before the scheduled trial panel hearing and orally requested a continuance for his hearing. The reason given for the request was for him to have time to consider resigning from the Bar Association. Counsel for the Bar objected to a continuance and respondent's request was denied by the trial panel upon noting his request was made less than twenty-four hours prior to the scheduled hearing and the absence of any extenuating circumstances that would justify delaying the hearing. 
¶23 In a telephone conversation between respondent and counsel for the Bar on the morning of the trial panel hearing, respondent stated he had a hearing in the District Court of Oklahoma County involving a juvenile matter that was scheduled at the same time as the trial panel hearing, and he would try to appear at his trial panel hearing upon conclusion of the juvenile proceeding. Upon conclusion of testimony before the trial panel, the trial panel had a short adjournment for the Bar's counsel to determine if any email or messages from respondent had been sent concerning his appearance before the trial panel. Upon reconvening the trial panel concluded the proceeding without any appearance from respondent.
Rule 6.4 Admission
¶24 A hearing was held before a trial panel of the Oklahoma Professional Responsibility Tribunal and the trial panel members unanimously recommended disbarment for respondent's professional discipline.
¶25 The Bar Association alleged respondent violated the same five Oklahoma Rules of Professional Conduct, 5 O.S.2011 Ch. 1, App. 3-A, (ORPC), in each of the seven grievances: Rules 1.1 (competent representation required),
[1] 1.3 (diligent and prompt legal representation required),[2] 1.4 (prompt and reasonable communication with a client required),[3] 1.5 (collecting an unreasonable fee prohibited),[4] and 8.4(a) (violate or attempt to violate a rule of professional conduct).[5] The Bar Association alleges respondent's repeated failure to respond to the Bar's requests for responses to the client grievances shows multiple violations of Rule 5.2 of the Rules Governing Disciplinary Proceedings (RGDP).[6] 
¶26 Respondent did not file an Answer to the Bar's Complaint, or seek additional time to file an Answer. The Bar filed a motion to deem the Complaint's allegations admitted pursuant to Rule 6.4, RGDP,
[7] and the trial panel granted the motion. The person who signed the certified mail receipts for service on respondent for both the Complaint and Bar's motion to deem allegations admitted testified she routinely signed for respondent's certified mail and placed it on respondent's desk. The Complaint and motion to deem its allegations admitted were both mailed by certified mail to respondent's new roster address after respondent made the change to his roster address. The Bar's evidence clearly shows service of the Complaint upon respondent as well as service of the Bar's motion to have the Complaint's allegations deemed admitted.
¶27 Disciplinary Rule 6.4 provides that if a respondent fails to answer the complaint, the charges shall be deemed admitted except that evidence shall be submitted for the purpose of determining the discipline to be imposed. We agree the charges are deemed admitted. However, we must note a difference between a Rule 6.4 admission of a Rule 8.4(a) violation based solely on the violation of another rule and violations based upon Rule 8.4(b), (c), and (d).
¶28 In State ex rel. Oklahoma Bar Ass'n v. Knight,
[8] we declined to accept a Rule 6.4 admission relating to Rule 8.4 of the ORPC when the record of the proceeding did not show unprofessional motive or a bad or evil intent for the unprofessional actions of the respondent.[9] This Court has explained that a Rule 6.4 RGDP admission of various provisions of a Rule 8.4 ORPC violation is based upon a record showing respondent's knowledge, intent, or motive concerning a respondent's violation of professional ethical standards.[10] We explained in Knight "while . . . his conduct appears to be an intentional ignorance of his ethical obligations, the evidence fails to show a bad or evil motive . . . ."[11] 
¶29 Separate provisions of Rule 8.4 rely on the lawyer's knowledge or intent, but the Bar relies upon the first clause of 8.4(a) which does not focus on the lawyer's knowledge or intent. "It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;. . . ."[12] This emphasized language is similar to former Disciplinary Rule, DR 1-102 (A)(1): "A lawyer shall not: (1) Violate a Disciplinary Rule."[13] When this Court applied former DR 1-102(A)(1) a violation of another disciplinary rule was also a violation of DR-102(A)(1).[14] 
¶30 In Knight, the Bar Association pled violations of "Rule 8.4 and 8.4(d)"[15] and not a Rule 8.4(a) violation. In the present case, the Bar Association's Complaint specifically pled a violation of Rule "8.4(A)" and no other provision of Rule 8.4, and the Complaint made no allegations concerning respondent's conduct involving his knowingly assisting or inducing others to violate a disciplinary rule.[16] We conclude no showing of evil intent or bad motive is necessary for the Rule 8.4(a) violation which is based solely upon a respondent's violation of a different professional rule of conduct. We accept the Rule 6.4 admission without requiring a showing on the record concerning respondent's intent.

Enhancement
¶31 The record shows a private reprimand respondent received from the Professional Responsibility Commission on August 23, 2013. Exhibit No. 46, O.B.A.D. No. 1969. The private reprimand involves respondent's professional misconduct relating to four clients. Respondent failed to respond to all four grievances as requested by the Bar. The misconduct included respondent's neglect of legal proceedings and failure to timely communicate with clients. The Commission found violations of Rules, 1.1, 1.3, 1.4, 1.5, 3.1, 3.2, 8.1(b), 8.4(a) and (d) as the basis for the private reprimand. 
¶32 The Complaint erroneously states that respondent received a private reprimand on November 28, 2011, in O.B.A.D. No. 1863. An oral motion by counsel for the Bar Association at the trial panel hearing was made to show a corrected date and docket number for the private reprimand on August 23, 2013, in O.B.A.D. No. 1969. The report of the trial panel accurately states O.B.A.D. No. 1969, but its Report erroneously states the corrected date of the reprimand as November 23, 2011.
[17] There is no evidence respondent was prejudiced by reference to the incorrect OBAD number and date that were corrected at the trial panel hearing. The Complaint alleges his prior private reprimand by the Professional Responsibility Commission, and respondent participated in that process and had notice of what the Bar was pleading in the present matter. This matter may be considered for enhancement purposes.[18] 
¶33 The trial panel's report states a retainer check from Haynes in the amount of $450.00 was deposited into respondent's personal account, and such should be used for the purpose of enhancement. The Complaint alleges Haynes paid respondent $1,500, but does not refer to a payment of $450. The investigator for the Bar testified that a $1,500 cashier's check from Conley and a $450 check from Haynes were deposited into respondent's personal account instead of a trust account. Photocopies of the negotiated checks and respondent's bank records were included in the exhibit. The Bar gave no notice to respondent that it would raise factual allegations or rules of professional conduct relating to mishandling[19] clients' funds.

¶34 A waiver is a relinquishment of a known right.
[20] A Rule 6.4 admission is an admission to the charges in the Bar's complaint. There is no language in Rule 6.4 stating that an admission pursuant to that rule is also an admission of additional charges of misconduct brought for the first time during the trial panel hearing held in the absence of the respondent. The General Counsel may amend a Complaint to add allegations relating to professional misconduct.[21] The known right that is waived pursuant to Rule 6.4 is the opportunity to object to the allegations in the complaint and amended complaints where notice of such have been given to a respondent with the result being a respondent's admission to those charges. Raising new allegations of professional misconduct at a trial panel hearing without notice to a non-appearing respondent is similar to the disapproved trial-by-ambush procedure in civil proceedings, unless a respondent has, on the record of the proceeding, specifically waived any objection to the new charges of professional misconduct.[22] 
¶35 The Bar Association must give notice to a lawyer when that lawyer's conduct is raised to show a breach of professional conduct[23] or a need for enhanced professional discipline.[24] A respondent must receive notice of the facts underlying the misconduct charges brought by the Bar Association, and when such notice is given this Court may consider those facts as discrete instances of misconduct or consider them as part of a larger set of circumstances.[25] We have declined to use allegations of improper misconduct raised for the first time before the trial panel[26] or in a post-hearing brief in this Court[27] when we determined the appropriate discipline. We have explained when the Bar's evidence strays from allegations made in a complaint or subsequent amended complaints, a respondent has a "burden to object to the Bar's proffer of improper proof and to ask for a continuance to afford him time to meet that issue, and a failure to object operates to waive the error, if any, in admitting evidence that stood in fatal variance with the complaint's allegations."[28] Respondent did not participate in the trial panel hearing, had no notice allegations relating to mishandling funds would be raised to enhance discipline, and made no Rule 6.4 admission that he mishandled funds. We decline to consider the allegations of mishandling funds for enhancement of discipline, but we do consider respondent's previous private reprimand for enhancement purposes.

Discipline and Costs
¶36 This Court possesses a nondelegable, original, and exclusive jurisdiction in a Bar disciplinary inquiry.
[29] The Court conducts a de novo review of the record[30] and the professional discipline imposed is based upon the respondent's conduct[31] and any history of respondent's professional misconduct,[32] as well as "discipline imposed upon other lawyers for similar acts of professional misconduct."[33] In Oklahoma Bar Ass'n v. Parker,[34] we noted the lawyer's neglect of three clients' legal matters, failure to communicate properly with clients, and a failure to return unearned fees. The respondent in Parker violated Rules 1.1, 1.3, 1.4, 1.5, 1.16 and 8.4(c), ORPC, and Rule 1.3 and 5.2, RGDP. In Parker, we noted for enhancement purposes a previous private reprimand for a violation of Rule 5.2, RGDP, where respondent did not timely respond to one grievance. We explained the proper discipline for respondent was to be disbarred from the practice of law, and compared the circumstances to State of Oklahoma, ex rel. Oklahoma Bar Association v. Passmore,[35] and State ex rel. Oklahoma Bar Association v. McCoy.[36] We noted the respondents had failed to respond to their clients' needs and to the inquiries from the Bar during the investigations of their grievances.[37] In Passmore the respondent violated Rules 1.1, 1.3, 1.4, 1.5(a) and 8.4(d) ORPC and Rules 1.3 and 5.2, RGDP,[38] and the Court imposed disbarment as the proper discipline. In Parker, we noted the respondent was given sufficient notice of the grievance and he failed to provide any explanation to the Oklahoma Bar Association or this Court regarding his lack of communication or commitment to represent his clients.[39] 
¶37 In the present case, respondent's former clients testified concerning their frustration with respondent not appearing at hearings, not filing required pleadings and motions, failure to return files, keeping unearned fees, not communicating with them, and their need to hire additional lawyers to fix situations caused by respondent's neglect. Because of the nature of respondent's professional misconduct, as enhanced by his previous discipline, as well as similarities of the present case with Parker and Passmore, the appropriate discipline for respondent's conduct is disbarment.
¶38 The Bar Association filed an application for an order assessing its costs against respondent. The costs were incurred for postage, witnesses (fees and mileage), and a transcript of the trial panel hearing. The amount of these costs is $1,198.38. The Rules Governing Disciplinary Proceedings (Rule 6.16)
[40] provides the costs of the investigation, record and disciplinary proceedings shall be surcharged against the disciplined lawyer, unless remitted for good cause by this Court.[41] Rule 6.16 requires the costs to be paid within ninety days of the Court's opinion becoming final.[42] Respondent has not provided any argument showing good cause to remit the costs in whole or in part.
¶39 The application of the Bar Association to assess costs against respondent in the amount of $1,198.38 is hereby granted.
Conclusion
¶40 Respondent is disbarred from the practice of law and his name is stricken from the Roll of Attorneys.
[43] Respondent is directed to comply with Rule 9.1, RGDP,[44] to notify his "clients having legal business then pending within twenty (20) days, by certified mail of the lawyer's inability to represent them and the necessity for promptly retaining new counsel." He must also file a formal withdrawal as counsel in any cases pending in any tribunal and must file an affidavit with the Professional Responsibility Commission and the Clerk of the Supreme Court stating his compliance with Rule 9.1. Respondent is further directed to pay the Bar its costs in this proceeding in the amount of $1,198.38, within ninety (90) days of the date of this opinion. He may seek reinstatement pursuant to Rule 11, RGDP, no earlier than five years from the date of this opinion.[45] As a precondition to reinstatement, he will be required to demonstrate total compliance with Rule 11, including the satisfaction of any claims that may be made against the Client Security Fund, if applicable. [46] 
¶41 ALL JUSTICES CONCUR. 

FOOTNOTES
[1] 5 O.S.2011 Ch. 1, App. 3-A, ORPC, Rule 1.1 states: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." 
[2] 5 O.S.2011 Ch. 1, App. 3-A, ORPC, Rule 1.3 states: "A lawyer shall act with reasonable diligence and promptness in representing a client." 
[3] 5 O.S.2011 Ch. 1, App. 3-A, ORPC, Rule 1.4 states: (a) A lawyer shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter;
(4) promptly comply with reasonable requests for information; and
(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional conduct or other law.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation. 
[4] 5 O.S.2011 Ch. 1, App. 3-A, ORPC, Rule 1.5(a) states: (a) A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent. 
[5] 5 O.S.2011 Ch. 1, App. 3-A, ORPC, Rule 8.4 (a) states: "It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;. . . ." 
[6] 5 O.S.2011 Ch. 1, App. 1-A, Rule 5.2, states in part concerning a lawyer's response to a grievance: " . . . who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct . . . The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline." 
[7] 5 O.S.2011 Ch. 1, App. 1-A, Rule 6.4 states: "The respondent shall within twenty (20) days after the mailing of the complaint file an answer with the Chief Justice. The respondent may not challenge the complaint by demurrer or motion. In the event the respondent fails to answer, the charges shall be deemed admitted, except that evidence shall be submitted for the purpose of determining the discipline to be imposed." 
[8] State ex rel. Oklahoma Bar Ass'n v. Knight, 2015 OK 59, 359 P.3d 1122. 
[9] State ex rel. Oklahoma Bar Ass'n v. Knight, 2015 OK 59, at ¶¶ 23-25, 359 P.3d at 1130-1131. 
[10] State ex rel. Oklahoma Bar Ass'n v. Knight, 2015 OK 59, at ¶ 23, 359 P.3d at 1130 (discussing Rule 8.4(b), (c), & (d)). 
[11] State ex rel. Oklahoma Bar Ass'n v. Knight, 2015 OK 59, ¶ 25, 359 P.3d at 1131. 
[12] 5 O.S.2011 Ch. 1, App. 3-A, ORPC, Rule 8.4 (a) at note 5 supra. 
[13] See 5 O.S.1991 Ch. 1, App. 2, ORPC, Rule 8.4, "Code Comparison," and the comparison of Rule 8.4 with former DR 1-102(A)(1). This comparison was also distributed to members of the Oklahoma Bar in 1988 in a special edition of the Oklahoma Bar Journal on the Oklahoma Rules of Professional Conduct. 59 O. B. J. No. 26B (June 25, 1988) pp. 63-64. 
[14] See, e.g., State ex rel. Oklahoma Bar Ass'n v. Boettcher, 1990 OK 92, 798 P.2d 1077, 1078 (respondent's stipulation that he violated DR 5-103(B) contained a stipulated conclusion that he thereby violated DR 1-102(A)(1)). 
[15] State ex rel. Oklahoma Bar Ass'n v. Knight, 2015 OK 59, ¶ 24, 359 P.3d at 1130. 
[16] Due process requires a respondent to receive notice of the allegations of misconduct. State ex rel. Oklahoma Bar Ass'n v. Bolusky, 2001 OK 26, ¶ 8, 23 P.3d 268, 273. See also State ex rel. Oklahoma Bar Ass'n v. Stow, 1998 OK 105, ¶ 21, 975 P.2d 869, 875 ("The Bar Association must allege facts sufficient to put the accused lawyer on notice of the charges and afford the respondent ample opportunity to defend against the allegations."). 
[17] Report of the Trial Panel, at ¶ 3, p.2 & p. 6 (S.C.B.D. No. 6306, Dec. 14, 2015). 
[18] State ex rel. Oklahoma Bar Ass'n v. Minter, 1998 OK 59, ¶¶ 16-18, 22-23, 961 P.2d 208, 212, 213 (" . . . failing to include in the complaint the allegations on which the private reprimands were based, there is no evidence that the Respondent was prejudiced by this omission. . . the complaint was sufficient to alert the Respondent that the two private reprimands could be used as enhancement of his discipline . . .the Respondent was fully informed of the consequences of agreeing to a private reprimand before the Commission . . . Respondent was informed that the two private reprimands before the Commission would be 'preserved and ... considered in any future disciplinary proceeding against [him]' . . . the Respondent's due process rights are not violated by the use of his previous two private reprimands."). 
[19] Mishandling a client's funds or property is often analyzed using three different and well-known culpability standards: (1) commingling (a lawyer should keep separate the property of the client and the lawyer's own property), simple conversion (a lawyer must apply a client's money of property for the specific purpose entrusted to the lawyer), and (3) misappropriation (theft by conversion or otherwise of the client's funds or property by the lawyer). State ex rel. Oklahoma Bar Ass'n v. Combs, 2007 OK 65, ¶¶ 14-16, 175 P.3d 340, 346-347; State ex rel. Oklahoma Bar Ass'n v. Johnston, 1993 OK 91, 863 P.2d 1136, 1144. 
[20] Shorter v. Tulsa Used Equipment and Industrial Engine Services, 2006 OK 72, n. 8, 148 P.3d 864, 868. See also Merrill on Notice, § 35 (1952), citing Federal Life Ins. Co. v. Whitehead, 1918 OK 324, 174 P. 784, 790, for the proposition that a waiver is the relinquishment of a known right and a notice is information of a condition affecting an existing right. 
[21] 5 O.S.2011 Ch. 1, App. 1-A, RGDP, Rule 6.5:
After the complaint has been filed, the General Counsel may amend the complaint to add or delete allegations as permitted under the general rules of civil procedure, subject to the respondent's right to file an answer within twenty (20) days after such amendment. 
[22] See State ex rel. Oklahoma Bar Ass'n v. Eakin, infra, at note 28, and accompanying text.
An obvious similarity in civil procedure is that a default judgment may not be properly granted on causes of action beyond those framed by the pleadings. See, e.g., Reed v. Scott, 1991 OK 113, 820 P.2d 445, 447, 20 A.L.R. 5th 913, explaining La Bellman v. Gleason & Sanders, Inc., 1966 OK 183, 418 P.2d 949, 953-954 ("We found that the judgment roll, on its face, revealed that a portion of the default judgment was beyond the issues framed by the pleadings, and that the trial court lacked the power to render a part of the particular default judgment."). While pleadings may be amended to conform to evidence, In re Guardianship of Stanfield, 2012 OK 8, n. 52, 276 P.3d 989, 1001, the Court has disapproved of a trial-by-ambush "in which a party is surprised and then not given a reasonable time to effectively defend itself." Corman v. H-30 Drilling, Inc., 2001 OK 92, ¶ 13, 40 P.3d 1051, 1054. 
[23] State ex rel. Oklahoma Bar Ass'n v. Eakin, 1995 OK 106, 914 P.2d 644, 649 ("The fundamentals of due process are applicable in lawyer disciplinary proceedings."). 
[24] State ex rel. Oklahoma Bar Ass'n v. Knight, 2015 OK 59, ¶ 32, 359 P.3d 1122, 1132 ("When the Bar seeks enhancement of discipline based upon former discipline it must allege the former discipline for the purpose of enhancement to give notice to the respondent. Pleading the prior discipline in the Complaint gives notice to a respondent that the prior discipline may be used for enhancement purposes."). 
[25] State ex rel. Oklahoma Car Ass'n v. Minter, 2001 OK 69, ¶ 23, 37 P.3d 763, 773-774. 
[26] State ex rel. Oklahoma Bar Ass'n v. O'Neal, 1993 OK 61, 852 P.2d 713, 716 (testimony that respondent represented two clients while under a suspension of his Bar license, and "[t]hese two representations were not addressed in [the] complaint, and the respondent was not notified that he would be charged with any violation in conjunction with these representations . . . and because these rules were not followed [Rule 6.2(Complaint) and Rule 6.5 (Amended Complaint)], this Court declines to act on this allegation.") 
[27] State ex rel. Oklahoma Bar Ass'n v. Combs, 2007 OK 65, n. 48, 175 P.3d 340, 350 ( "The Bar in its Reply Brief in Chief asserted violations of additional rules . . . 'The fundamentals of due process are applicable in lawyer disciplinary proceedings. The Bar must allege facts sufficient to put the accused lawyer on notice of the charges and afford the respondent ample opportunity to defend against the allegations.' . . . We find that Combs was not placed on notice of these charges and therefore refrain from ruling on the alleged violations."). 
[28] State ex rel. Oklahoma Bar Ass'n v. Eakin, 1995 OK 106, 914 P.2d at 650. 
[29] State ex rel. Oklahoma Bar Ass'n v. Mothershed, 2011 OK 84, ¶ 33, 264 P.3d 1197, 1210. 
[30] State ex rel. Oklahoma Bar Ass'n v. Clausing, 2009 OK 74, ¶ 4, 224 P.3d 1268, (the Court examines de novo the relevant facts to determine whether discipline is warranted and what sanction, if any, is to be imposed for a lawyer's misconduct). 
[31] Our opinions "have consistently recognized that the facts and circumstances of each case will dictate its resolution." State ex rel. Oklahoma Bar Ass'n v. Conrady, 2012 OK 29, ¶ 11, 275 P.3d 133, 138. 
[32] State ex rel. Oklahoma Bar Ass'n v. Bolton, 1994 OK 53, 880 P.2d 339, 345 (if respondent's history "should reveal a pattern of misconduct, it will be a factor in tailoring the appropriate discipline."). 
[33] State ex rel. Oklahoma Bar Ass'n v. Layton, 2014 OK 21, ¶ 30, 324 P.3d 1244, 1256. 
[34] 2015 OK 65, 359 P.3d 184. 
[35] Parker, 2015 OK 65, at ¶ 20, citing State of Oklahoma, ex rel. Oklahoma Bar Ass'n v. Passmore, 2011 OK 90, 264 P.3d 1238. 
[36] Parker, 2015 OK 65, at ¶ 20, citing State ex rel. Oklahoma Bar Ass'n v. McCoy, 1996 OK 27, 912 P.2d 856. 
[37] Parker, 2015 OK 65, at ¶ 20. 
[38] Passmore, 2011 OK 90, at ¶¶ 12-14, 264 P.3d at 1242-1243. 
[39] Parker, 2015 OK 65, at ¶ 19. 
[40] 5 O.S. 2011 Ch. 1, App. 1-A, RGDP, Rule 6.16, Rules Governing Disciplinary Proceedings: "The costs of investigation, the record, and disciplinary proceedings shall be advanced by the Oklahoma Bar Association (or the Professional Responsibility Commission, if provision therefor has been made in its budget). Where discipline results, the cost of the investigation, the record, and disciplinary proceedings shall be surcharged against the disciplined lawyer unless remitted in whole or in part by the Supreme Court for good cause shown. Failure of the disciplined lawyer to pay such costs within ninety (90) days after the Supreme Court's order becomes effective shall result in automatic suspension from the practice of law until further order of the Court." 
[41] State ex rel. Oklahoma Bar Ass'n v. Knight, 2015 OK 59, ¶ 37, 359 P.3d 1122, 1133; State ex rel. Oklahoma Bar Ass'n v. Demopolos, 2015 OK 50, ¶ 40, 352 P.3d 1210, 1222. 
[42] State ex rel. Oklahoma Bar Ass'n v. Knight, supra; State ex rel. Oklahoma Bar Ass'n v. Demopolos, supra. 
[43] 5 O.S.2011 Ch. 1, App. 5, Rules Governing Admission to the Practice of Law in the State of Oklahoma, Rule 1, "Qualifications to Practice Law in Oklahoma," states in part: "To be admitted to the practice of law in the State of Oklahoma, the applicant: . . . shall have signed the Roll of Attorneys . . . ." 
[44] 5 O.S.2011 Ch. 1, App. 1-A, RGDP, Rule 9.1 states:
When the action of the Supreme Court becomes final, a lawyer who is disbarred or suspended, or who has resigned membership pending disciplinary proceedings, must notify all of the lawyer's clients having legal business then pending within twenty (20) days, by certified mail, of the lawyer's inability to represent them and the necessity for promptly retaining new counsel. If such lawyer is a member of, or associated with, a law firm or professional corporation, such notice shall be given to all clients of the firm or professional corporation, which have legal business then pending with respect to which the disbarred, suspended or resigned lawyer had substantial responsibility. The lawyer shall also file a formal withdrawal as counsel in all cases pending in any tribunal. The lawyer must file, within twenty (20) days, an affidavit with the Commission and with the Clerk of the Supreme Court stating that the lawyer has complied with the provisions of this Rule, together with a list of the clients so notified and a list of all other State and Federal courts and administrative agencies before which the lawyer is admitted to practice. Proof of substantial compliance by the lawyer with this Rule 9.1 shall be a condition precedent to any petition for reinstatement. 
[45] 5 O.S.2011 Ch. 1, App. 1-A, RGDP, Rule 11.1 states in part:
A person whose name has been stricken from the Roll of Attorneys for non-payment of dues, or who has been suspended from the practice of law for a period of longer than two (2) years or disbarred, or who has resigned membership in the Association, may be readmitted to the practice of law only through the following procedures: . . . (e) The applicant shall not be permitted to file an application for reinstatement, after disbarment or resignation pending investigation or disciplinary proceedings, within five (5) years of the effective date of the order of the Court disbarring the applicant or accepting the resignation, nor shall any applicant be permitted to file an application for reinstatement within one (1) year after the Supreme Court has denied an earlier application." 
[46] 5 O.S.2011 Ch. 1, App. 1-A, RGDP, Rule 11.1(b) states:
"A person whose name has been stricken from the Roll of Attorneys for non-payment of dues, or who has been suspended from the practice of law for a period of longer than two (2) years or disbarred, or who has resigned membership in the Association, may be readmitted to the practice of law only through the following procedures: . . . (b) If any funds of the Client's Security Fund of the Oklahoma Bar Association have been expended on behalf of the applicant, the applicant must show the amount paid and that the same has been repaid to the Oklahoma Bar Association to reimburse such Fund."




 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1990 OK 92, 798 P.2d 1077, State ex rel. Oklahoma Bar Ass'n v. Boettcher
Discussed
 1991 OK 113, 820 P.2d 445, 62 OBJ 3426, Reed v. Scott
Discussed
 1993 OK 61, 852 P.2d 713, 64 OBJ 1411, State ex rel. Oklahoma Bar Ass'n v. O'Neal
Discussed
 1993 OK 91, 863 P.2d 1136, 64 OBJ 2082, State ex rel. Oklahoma Bar Ass'n v. Johnston
Discussed
 2001 OK 26, 23 P.3d 268, 72 OBJ 832, STATE ex. rel. OKLAHOMA BAR ASSN. v. BOLUSKY
Discussed
 1994 OK 53, 880 P.2d 339, 65 OBJ 1862, State ex rel. Oklahoma Bar Assn. v. Bolton
Discussed
 2001 OK 69, 37 P.3d 763, 72 OBJ 2604, STATE EX. REL. OKLAHOMA BAR ASSN. v. MINTER
Discussed
 2001 OK 92, 40 P.3d 1051, 73 OBJ 878, CORMAN v. H-30 DRILLING, INC.
Discussed
 1918 OK 324, 174 P. 784, 73 Okla. 71, FEDERAL LIFE INS. CO. v. WHITEHEAD
Discussed
 1966 OK 183, 418 P.2d 949, LA BELLMAN v. GLEASON & SANDERS, INC.
Discussed
 1995 OK 106, 914 P.2d 644, 66 OBJ 3187, State ex rel. Oklahoma Bar Assn. v. Eakin
Discussed at Length
 1996 OK 27, 912 P.2d 856, 67 OBJ 786, State ex rel. Oklahoma Bar Assn. v. McCoy
Discussed
 2006 OK 72, 148 P.3d 864, SHORTER v. TULSA USED EQUIPMENT AND INDUSTRIAL ENGINE SERVICES
Discussed
 2007 OK 65, 175 P.3d 340, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. COMBS
Discussed at Length
 2009 OK 74, 224 P.3d 1268, STATE ex rel OKLAHOMA BAR ASSOCIATION v. CLAUSING
Discussed
 2011 OK 84, 264 P.3d 1197, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MOTHERSHED
Discussed
 2011 OK 90, 264 P.3d 1238, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. PASSMORE
Discussed at Length
 2012 OK 8, 276 P.3d 989, IN THE MATTER OF THE GUARDIANSHIP OF STANFIELD
Discussed
 2012 OK 29, 275 P.3d 133, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. CONRADY
Discussed
 2014 OK 21, 324 P.3d 1244, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. LAYTON
Discussed
 2015 OK 50, 352 P.3d 1210, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. DEMOPOLOS
Discussed
 2015 OK 59, 359 P.3d 1122, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. KNIGHT
Discussed at Length
 2015 OK 65, 359 P.3d 184, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. PARKER
Discussed at Length
 1998 OK 59, 961 P.2d 208, 69 OBJ 2097, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MINTER
Discussed
 1998 OK 105, 975 P.2d 869, 69 OBJ 3611, State ex. rel. Oklahoma Bar Association v. Stow
Discussed